## LOGAN THOMAS v. STATE.

No. A-9699. April 4, 1940.
(101 P. 2d 283.)

H. A. Stanley, of Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. The information in this case, in substance, charged that in Carter county on or about the 15th day of December, 1938, the defendant, Logan Thomas, against the will and without the consent of Dorothy Thomas, a female person, and not the wife of said defendant, by means of force overcoming her resistance, did rape, ravish and carnally know her, the said Dorothy Thomas.

Upon the trial the jury returned a verdict of rape in the first degree as charged in the information and left the punishment to be assessed by the court.

Motions for new trial and in arrest of judgment were overruled June 12, 1939, and rendering judgment on the verdict the court sentenced the defendant to confinement at hard labor in the state penitentiary for a term of 45 years.

Under several assignments of error it is contended that the evidence is insufficient to sustain the verdict, in that it does not show force overcoming resistance, and is insufficient in law to constitute rape in the first degree.

It appearing that upon arraignment the defendant without counsel stated that he was unable to employ counsel, the court appointed Henry A. Stanley to represent him.

The prosecutrix testified as follows:

"Q. How long have you lived in Ardmore? A. Four years in November. Q. How old are you? A. Sixteen now. Q. When was your birthday? A. February 3rd, this past February. Q. You were 16 this past February? A. Yes, sir. Q. (By Mr. Bruce:) Were you living in Ardmore last December, on the 15th day? A. Yes, sir. Q. Where were you living on the 15th day of December of last year? A. 818 Second Avenue Northeast. Q. Are you still living there? A. No, sir. Q. You live on what street now? A. Fifth Avenue. Q. On the night of December 15th, did

anything happen? A. Yes, sir. Q. Tell the jury what happened? A. My father forced me to have intercourse with him. Q. Did you occupy the same bed with him? A. Yes, sir. Q. Tell the jury why you did that? Q. (By Mr. Bruce:) Tell the jury why your father slept in the same bed with you? A. Because my little brother four years old was sick and it was crowded, and he didn't want to sleep with him and he said he would sleep with me. Q. What time that night did your father force you to have intercourse with him? A. I don't know what time, it was in the forenight. By the Court: You mean the early part of the night? A. Yes, sir. By the Court: Speak so all the jurors can hear you. Q. (By Mr. Bruce:) Did you resist him any? A. Yes, sir. By the Court: Tell the Court what you did and what he did. Q. (By Mr. Bruce:) What did you do? A. I tried to keep him from it, but he forced me, he made threats. Q. Did you make any outcry? A. No, sir. Q. Why? A. Because I was afraid to. Q. Just you and your father was in that bed? A. Yes, sir. Q. How many brothers and sisters do you have? A. Five brothers and one sister. Q. When was the first time that he had intercourse with you? A. When we were at his sister's house, at Seminole. Q. Why were you up there? A. His sister was sick. Q. Did your mother go up there? A. No, sir. Q. Who went up there? A. Me and him. Q. How did you go? A. Hitch-hiked. Q. Where did that happen up at Seminole? A. In the bedroom. Q. At whose house? A. My aunt's, his sister. Q. Did you ever have intercourse with him from the time you moved over to where you live now? A. Yes, sir. Q. When was that? A. I don't know, about February or March. Q. Did you resist him at that time? A. Yes, sir. Q. Did you ever have any conversation with your father after that? A. Yes, sir. Q. What did he talk to you about? A. He would ask me if I was pregnant. Q. What would you tell him? A. I would tell him no. Q. Are you pregnant now? A. Yes, sir. Q. How far along are you? A. Six months. Q. Why do you know? A. Because I have felt movement and I went to a doctor. Q. You say you have felt movement? A. Yes, sir. Q. What doctor did you go to? A.

Dr. Hardy. Q. Did you ever have intercourse with any other man or boy besides your father? A. No, sir. Q. He was the first one? A. Yes, sir. Q. Did you tell your mother what condition you were in? A. No, sir. Q. Why didn't you tell your mother? A. She was out in the garden with him and he just told her hisself, out in the garden I guess—(Interrupted). By the Court: Don't tell what you guess. Q. (By Mr. Bruce:) This happened in Carter county, Oklahoma? A. Yes, sir."

## Cross-Examination

"By Mr. Stanley: Q. You said that your father had had intercourse with you previous to that? A. Yes, sir. Q. When was that? A. At Seminole, Okla. Q. When was that? A. In June or July while school was going on. Q. That was some seven or eight months before December? A. Yes, sir. Q. Then you say he had intercourse with you after that? A. Yes, sir. Q. Before December? A. Yes, sir. Q. How many times? A. Just once. Q. Just once? A. Yes, sir. Q. You went to school all of last year, Miss Dorothy? A. Yes, sir, all but the last two weeks. Q. You graduated from the Junior High School? A. Yes, sir. Q. You and your father were sleeping together? A. Yes, sir. Q. You slept together the night before? A. Yes, sir. Q. And you had been sleeping together for a long time? A. Yes, about a month, for quite awhile. Q. You slept together nearly all the last year? A. Sometimes, not continuously. Q. Your father and mother never slept together? A. Sometimes. Q. Now you and your father had been sleeping together in December, you had slept together in November of last year, did you or not, most of the time? A. Yes, sir. Q. In October most of the time? A. Yes, sir. Q. In September most of the time? A. Sometimes. Q. And you tell the jury he never had intercourse with you but one time from the time you were over at Seminole up until the 15th? A. He tried to. Q. Who was at home the night this occurred? A. All of us, the family. Q. Your mother and sister and two big brothers? A. Yes, sir. Q. They were all at home? A. Yes, sir. Q. How many rooms were in the house? A. Four. Q. You and your father were sleeping in one room? A.

Yes, sir. Q. The boys were sleeping in the other room? A. Yes, sir. Q. The boy and the little girl and your mother were in the other room? A. Yes, sir. Q. The door was open between the room you were in and the room in which your mother was in? A. Yes, sir. Q. You don't claim he got on top of you? A. He forced me to. Q. You don't answer my question, the question is you don't claim he got on top of you? A. No. Q. Isn't it a fact that after you woke up you laid there and you fondled each other, and finally you just turned over side by side? A. No. Q. How did it happen? A. He got hold of my underskirt and kept wrestling around. Q. Didn't you take your hand and put his part in your part? A. No. Q. You didn't do that? A. No. Q. Your mother was in the next room? A. Ah-huh. Q. You didn't say anything? A. No. Q. You didn't make any outcry? A. No. Q. Your brothers were in the next room? A. Yes. Q. You didn't call for them? A. No. Q. They are grown, aren't they practically? A. Yes, sir. Q. I will ask you this, if you didn't lay there side by side and you were gratified and he was not. You enjoyed it, didn't you? A. No, I never did. Q. I will ask you this, if after this happened you were satisfied and you got up and went to the toilet? A. Yes, he told me to. Q. You went through your mother's room? A. No. Q. How did you go? A. Through my brothers' room. Q. You came back to your bed? A. Yes. Q. You stayed there that night? A. Yes. Q. The next night? A. Yes, sir. Q. The next five or six months, now there wasn't anything to keep you from speaking to your brothers as you went through the room, was there? A. I was afraid of him. By the Court: You said awhile ago something about some threats, what about that? A. He threatened me and told me I had better not tell Mama, that if I did his word was as good as mine, he said his life wouldn't be worth anything if I told. By Mr. Stanley: Counsel for defendant: Q. And you were there when he told your mother about it? A. Yes, sir. By the Court: Did he ever strike you or anything like that? A. No, sir, he tore the petticoat off though. By the Court: A juror wishes to ask a question. By a member of the jury panel:

Q. Why didn't she tell her mother? A. Because I was afraid.

"Redirect.

"Q. That episode at Seminole, that was the first time your father had had intercourse with you? A. Yes, sir."

Floyd Randolph, sheriff, testified that he was at the county jail when deputy sheriff Ross brought in the defendant and heard the defendant say that he had been sleeping with his daughter and temptation got the better of him, and he had intercourse with her.

To the same effect was the testimony of Officers Ross and Bartlett.

Called as a witness on behalf of the state, Mrs. Logan Thomas testified as follows:

"Q. You live in Ardmore, and Dorothy Thomas is your daughter? A. Yes, sir. By Mr. Stanley: Just a moment—you are the wife of this defendant? A. Yes, sir. Defendant objects on the ground of incompetency to witness testifying. By Mr. Bruce: County Attorney. Not for proving age. By the Court. Yes, she is incompetent to testify to anything against her husband in this case. Witness will stand aside."

When the state rested, counsel for the defendant interposed a demurrer to the evidence, as insufficient to prove the crime charged in the information and moved the court that the defendant be discharged, which was overruled.

No testimony was given by the defendant or by any witness in his behalf, and both parties rested at the close of the evidence for the state.

It is contended on the part of the defendant that, in any view which may reasonably be taken of the testimony of the prosecutrix, it was insufficient to justify or sustain the verdict.

In support of this contention it is urged that the testimony of the prosecutrix clearly showed that she did not resist to her ability.

The rule contended for by the defendant was condemned by this court in the case of Bulls v. State, 33 Okla. Cr. 64, 241 P. 605, wherein this court held:

"To support charge of rape, female's resistance need only be such as to make nonconsent and actual resistance reasonably manifest, having regard for her age, strength, and surrounding circumstances."

In the opinion it is said:

"The old rule of 'resistance to the uttermost' is obsolete, and is repudiated by the more modern authorities. The law does not require that the woman shall do more than her age, strength, the surrounding facts, and all attending circumstances make it reasonable for her to do in order to manifest her opposition. In reference to the degree of resistance required, the jury should be instructed that it is necessary, not that the prosecutrix should have made the uttermost resistance, but that she has made such resistance as she was capable of making at the time. See 33 Cyc. 1506, and cases cited."

In the case of Burtt v. State, 64 Okla. Cr. 68, 77 P. 2d 580, this question was discussed and authorities reviewed at some length. The conclusion arrived at being adverse to the rule contended for by defendant's counsel in this case.

Upon the undisputed facts and circumstances in evidence the defendant's contention that the crime charged, rape accomplished by force, overcoming resistance, was not proved by the evidence is without substantial merit.

Another contention made is that, since the evidence discloses the prosecutrix to have been of the age of 15 years, the offense was rape in the second degree, and that

for this reason the evidence does not sustain a conviction of rape in the first degree.

The section of our Penal Code defining rape is in part as follows:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances:

"1st. Where the female is under the age of sixteen years. * * *

"4th. Where she resists but her resistance is overcome by force and violence." Section 2515, Sts. 1931, 21 Okla. St. Ann. § 1111.

The following sections classify the crime of rape into degrees and fix the punishment:

"Rape committed by a male over 18 years of age upon a female under the age of 14 years, or incapable through lunacy or unsoundness of mind of giving legal consent; or accomplished with any female by means of force overcoming her resistance, or by means of threats of immediate and great bodily harm, accompanied by apparent power of execution, preventing such resistance, is rape in the first degree. In all other cases rape is of the second degree." Section 2518, 21 Okla. St. Ann. § 1114.

"Rape in the first degree is punishable by death or imprisonment in the penitentiary, not less than 15 years, in the discretion of the jury, or in case the jury fail or refuse to fix the punishment then the same shall be pronounced by the court." Section 2519, 21 Okla. St. Ann. § 1115.

"Rape in the second degree is punishable by imprisonment in the penitentiary not less than one year nor more than fifteen years." Section 2520, 21 Okla. St. Ann. § 1116.

Section 2515, 1st subdi., defines rape upon a female under the age of 16 years. Under this subdivision unlawful intercourse with a female under the age of 16 years

is rape. If the male is under the age of 18, and the female is above the age of 14 years, and the act is with her consent, no offense is committed. If the male is above the age of 18 years and the female over the age of 14 years, not the wife of the perpetrator, gives her consent, the act is rape in the second degree. Brasel v. State, 48 Okla. Cr. 403, 291 P. 807.

In so far as the case of Short v. State, 42 Okla. Cr. 437, 276 P. 703, conflicts with this opinion, it is overruled.

The instructions of the court submitted the issue of rape committed by means of force overcoming resistance as defined by section 2515, 4th subdi., and classified as rape in the first degree, section 2518, and submitted the issue of statutory rape, classified as rape in the second degree, as defined by section 2515, 1st subd., where the female, under the age of 16 years, gives her consent.

An act of sexual intercourse is rape in the first degree without regard to the age of the female, when accomplished with a female not the wife of the perpetrator, accomplished by means of force, overcoming her resistance, or by means of threats of immediate or great bodily harm, accompanied by apparent power of execution.

In the case of Davis v. State, 17 Okla. Cr. 604, 191 P. 1044, this court held:

"Rape in the first degree may be committed upon a female of any age, when accomplished by force and violence overcoming her resistance, or by means of threats of immediate and great bodily harm, accompanied by apparent power of execution."

The exceptions taken to certain instructions given by the court are not argued in the brief, and we find that the instructions given fully covered the law of the case,

and were as favorable to the defendant as he could have demanded.

Several other alleged errors are argued, but we find them so lacking in substantial merit that we would not feel justified to extend this opinion by their discussion.

The record shows that the defendant was accorded a fair trial and had the benefit of able counsel, and no error requiring a reversal is shown.

The only other proposition presented in this appeal is the insistence that the punishment imposed by the trial court is excessive.

Under the Code of Criminal Procedure, sec. 3204, 22 Okla. St. Ann. § 1066, this court is authorized to modify the judgment and sentence of the trial court, when such a course would be in furtherance of the ends of justice, and conduce to the human administration of the law, and the remedy in cases like this is found, not in a new trial, but by reducing the punishment. Upon the record before us we are convinced that the punishment imposed is excessive.

It is both the spirit and intention of our laws that sentences shall be imposed in criminal cases for the protection of society and the reformation of the criminal, and sentences should be imposed in keeping with the spirit of the law.

It appears from the record that at the time of the trial the defendant was 45 years of age, and while the crime is heinous, taking into consideration the age of the defendant and all of the surrounding circumstances, we are of the opinion that the ends of justice will be satisfied by reducing the punishment imposed, and that the judgment should be modified by reducing the sentence

of 45 years' imprisonment in the penitentiary to a term of 20 years' imprisonment. The judgment of the district court of Carter county herein is so modified; as thus modified the judgment is affirmed.

BAREFOOT and JONES, JJ., concur.