Miles Isaac **STRUNK**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defend-
ant in Error.

No. A–14711.

Court of Criminal Appeals of Oklahoma.

Jan. 29, 1969.

**218**

Robert L. Gregory, Enid, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Miles Isaac Strunk, hereinafter referred to as defendant, was charged, tried and convicted in the Superior Court of Garfield County with the crime of Rape in the First Degree; he was sentenced to serve 30 years in the State Penitentiary, from which judgment and sentence he appeals.

On appeal the defendant urges five assignments of error, which we will consider in the order in which they were raised during the lower trial court proceeding.

Under defendant's proposition #2, he urges that the trial court erred in allowing the state to amend the Information, by inserting the words "accompanied by apparent power of execution," which amendment defendant alleges raised the degree of the crime charged from that of second degree rape to the crime of rape in the first degree. The Information, as amended, appears in the record at page 6 of the case-made as follows:

"STATE OF OKLAHOMA, GARFIELD COUNTY, ss:

I, the undersigned District Attorney of Garfield County, Oklahoma, in the name, by the authority, and on behalf of the State of Oklahoma, give information that on or about the 8th day of May, A.D., 1967, in said County of Garfield and State of Oklahoma MILES ISAAC STRUNK did then and there unlawfully, willfully and feloniously, with the use of force and violence and by means of threats of immediate and great bodily harm, accompanied by apparent power of execution, to one Kathryn Walker, and did then and there rape, revish [sic], carnally know and have secual intercourse with said female against her will and consent, contrary to the form of the Statutes in such case made and provided, and against the peace and dignity of the State of Oklahoma.

VIRGIL R. BALL, District Attorney

By   /s/   Norman A. Lamb

       Assistant District Attorney."

Title 22, O.S. § 304, provides:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall

cause any delay of the trial, unless for good cause shown by affidavit."

In construing this statute, this Court stated in Cody v. State, Okl.Cr.App., 376 P. 2d 625, in Syllabus No. 3:

> "An information may be amended in matters of either form or substance when it can be done without prejudice to the substantial rights of the accused."

██ In the instant case the Information, prior to its amendment, was sufficient to charge the offense of Rape in the First Degree and not Rape in the Second Degree, as contended by the defendant. The defendant had had a preliminary hearing, had been arraigned in open court where he waived the reading of the Information, was ready to proceed to trial prior to the amendment, when the State, over his objection, was allowed to amend. He did not request that the case be remanded for a preliminary hearing, but rather, insisted on proceeding to trial on the charge of Rape in the Second Degree and when this plea was to no avail, he orally requested a continuance which was overruled by the court. The Information, prior to its amendment, was sufficient to inform the defendant of the charge for which he was to be tried, and while no model of pleading, it was adequate under the general rule set forth in 75 C.J.S. Rape § 39, p. 504, wherein it is stated:

> "An indictment for rape by threats may allege the use of threats generally without specifying them. An allegation that the act was committed by force and against the will of the female is equivalent to stating that she was prevented from resisting by threats of immediate and great bodily harm."

██ We are of the opinion, and therefore hold, that the amendment was an amendment as to form rather than substance and this assignment of error is without merit.

In his fifth assignment of error, the defendant urges that he did not have an impartial jury since the jury was limited to only those jurors who would vote for the death penalty. To support this contention he refers to the recent opinion of the United States Supreme Court decision, Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. In that opinion, the court ruled:

> "Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

As the Assistant Attorney General, Mr. Charles Owens, succinctly illustrates in his reply brief, this argument is not available in the present case as is clearly pointed out in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797. In the body of the *Bumper* opinion, supra, it is stated:

> "Our decision in *Witherspoon* does not govern the present case, because here the jury recommended a sentence of life imprisonment. The petitioner argues, however, that a jury qualified under such standards must necessarily be biased as well with respect to a defendant's guilt, and that his conviction must accordingly be reversed because of the denial of his right under the Sixth and Fourteenth Amendments to trial by an impartial jury. * * *
>
> We cannot accept that contention in the present case. The petitioner adduced no evidence to support the claim that a jury selected as this one was is necessarily 'prosecution prone,' and the materials referred to in his brief are no more substantial than those brought to our attention in *Witherspoon*. Accordingly, we decline to reverse the judgment of conviction upon this basis."

██ In accordance with *Bumper*, supra, we are of the opinion that this assignment of error is without merit. Moreover, we observe that the question is not properly before us since the voir dire ex-

amination of the jurors was not made a part of the record and hence does not support counsel's contention. We have repeatedly held that we do not presume error from a silent record.

It is also urged under this proposition that after exhausting the orginal jury panel, prospective jurors were then taken off the street by the sheriff. This assignment of error is also without merit since it is not supported by the record.

This leads us to a consideration of whether the evidence supports the verdict of the jury. In order to consider this proposition, we will briefly set forth a summary of the evidence relating to this issue.

Kathryn Walker, the complaining witness against the defendant, testified that on May 8, 1967, between 6:30 and 7:00 p. m., she heard a knock at her door. After she opened the door, the defendant, who had been standing out of sight beside the door, walked into the living room and asked her if she knew a boy named "Frank." The prosecutrix denied knowing such a person, and the defendant informed her that he had been asked by Frank to tell the prosecutrix to write to him. Shortly thereafter, he walked back to the door and after slamming it shut, attacked the prosecutrix by biting her on the back and placing a finger in her mouth. She was told to quit screaming for help or he would kill her. After the prosecutrix heard footsteps in the next apartment, she renewed the struggle by biting the defendant's fingers and kicking him and again she was told to quit struggling or she would be killed.

After realizing that the next-door neighbors had not heard her and had left in their car, the prosecutrix ceased to struggle and allowed herself to be disrobed. The defendant then raped her and allowed her to get up after she convinced him that her sister would be coming by the house. The defendant renewed his threat of killing her if she filed any charges against him.

Hoping for a chance to escape, she accepted the defendant's offer of going to a night club and liquor store with him. While the defendant was being asked for identification at the liquor store, she was able to escape and ran to the Bass Building where the night watchman let her in to use the telephone. In describing her assailant to the night watchman, she stated that he was wearing a blue and white checkered shirt. Mrs. Bob Alsobrook picked up Miss Walker and later took her to the police station and then to the hospital where she was examined by Dr. Mark D. Holcomb.

Dr. Holcomb testified that his examination showed a laceration of the vaginal opening about one-half inch long; two bruises which could have been bite marks on her back, and bruises on the inside of the prosecutrix's mouth, with slight hemorrhaging.

After further testimony from Miss Walker, the State produced as witnesses Mr. and Mrs. Bob Alsobrook, who testified as to the prosecutrix's high emotional state when they first received her call for help.

Enid Police Detective, Eugene Graham, was then called to the stand. He testified that when he went to make his investigation of the rape scene, while still outside the building, he saw a man inside the prosecutrix's apartment. As the detective stepped onto the porch, the apartment door was then slammed shut and locked and he then ran outside the building when he heard someone leaving through a window. He testified that the man refused to stop when ordered to by the detective, even after a warning shot had been fired; however, he was able to catch and identify the defendant after the defendant ran into a fence and was knocked down. He further testified that after the arrest of the defendant, he returned to the hospital where he photographed the bite marks made on the prosecutrix's back.

The defendant elected not to take the stand in his own behalf and produced as his only witness his mother. Mrs. Esther Strunk brought the shirt the defendant was wearing the night he was arrested, and identified it as being green and gray in color.

It is the defendant's contention that the evidence as above set forth is insufficient to support the verdict of the jury. With this contention we cannot agree. In Thomas v. State, 69 Okl.Cr. 188, 101 P.2d 283, in the first paragraph of the syllabus, this Court stated:

"An act of sexual intercourse is rape in the first degree without regard to the age of the female, when accomplished with a female, not the wife of the perpetrator, where she resists but her resistance is overcome by force and violence, or where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution. Penal Code, Sec. 2515, 4th and 5th subdivs., 21 Okl.St.Ann. § 1111, subds. 4, 5."

In Bulls v. State, 33 Okl.Cr. 64, 241 P. 605, cited with approval in Thomas v. State, supra, this Court, speaking through the Honorable Judge Doyle, stated:

"The old rule of 'resistance to the uttermost' is obsolete, and is repudiated by the more modern authorities. The law does not require that the woman shall do more than her age, strength, the surrounding facts, and all attending circumstances make it reasonable for her to do in order to manifest her opposition. In reference to the degree of resistance required, the jury should be instructed that it is necessary, not that the prosecutrix should have made the uttermost resistance, but that she has made such resistance as she was capable of making at the time."

A careful examination of the record is convincing that the evidence of the prosecutrix is such that it was not necessary, under the law, that her testimony be corroborated. Her testimony is clear and concise and doesn't bear any suggestion either on direct or cross-examination that it is improbable or false. In fact, the record clearly shows that her testimony was amply corroborated by the findings made by the examining physician, Dr. Holcomb. However, as is pointed out by this Court in Haga

v. State, Okl.Cr., 422 P.2d 221, the following is stated in the body of the opinion:

"This Court has repeatedly held that a conviction for rape may be had on the uncorroborated testimony of prosecutrix, or on slight corroboration, where the testimony of the prosecutrix is not inherently improbable or unworthy of credence. See Gordon v. State, 75 Okl.Cr. 356, 131 P.2d 503; Gaines v. State, Okl.Cr., [App.], 267 P.2d 612, and the many cases cited in each of these cases."

In accordance with the above cited authorities, we are of the opinion that this assignment of error is without merit.

The last proposition of defendant, with which we will deal, is his contention "that the trial court erred in not giving an instruction for second degree rape, as agreed during the course of the trial which omission by the court was highly prejudicial to the rights of the defendant and resulted in the excessive verdict of the jury." This proposition is properly answered by the Assistant Attorney General, in his brief, and we hereby adopt his language:

"It is a well settled rule that the instructions given to the jury are left to the discretion of the judge subject to certain requisites found in 22 O.S.1961, § 856, which provides in pertinent part:

'In charging the jury, the court must state to them all matters of law which it thinks necessary for their information in giving their verdict, and if it state the testimony of the case, it must in addition inform the jury that they are the exclusive judges of all questions of fact. Either party may present to the court any written charge and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused.'

The state submits that the counsel's specific complaint as to the instructions can be disposed of by the application of the fundamental rule which the court has stated many times, namely, that instructions must be considered as a whole and

will be sufficient if, when so considered they fairly and correctly state the law applicable to the case. Barber v. State, Okl. Cr., 388 P.2d 320. The trial court was bound to instruct on first degree rape only since this case, as the court pointed out, was either first degree rape or none at all."

We must accordingly hold that this assignment of error is without merit. As a part of this contention the defendant further urges that the punishment imposed was excessive. Suffice it to say that the evidence amply supports the verdict of the jury, the trial court carefully and meticulously instructed the jury as to the law applicable, and the punishment imposed was well within the range of punishment provided by law. Finding no error sufficient to justify a modification or reversal, we find this assignment of error without merit, and the judgment and sentence appealed from is accordingly affirmed.

BRETT, P. J., and NIX, J., concur.