**Tennyson Andrew HAURY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–793.**

Court of Criminal Appeals of Oklahoma.

March 25, 1975.

**992**

Quinton R. Tipton, Carnegie, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Jim Patton, Legal Intern, for appellee.

OPINION

PER CURIAM:

Appellant, Tennyson Andrew Haury, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Caddo County, Oklahoma, Case No. CRF–74–33, for the offense of Rape, First Degree, in violation of 21 O.S.1971, § 1111. The jury fixed his punishment at five (5) years' imprisonment and from this judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness at trial was Dr. A. C. Roberson, who testified that on March 6, 1974, at approximately 10:15 p. m., he had occasion to examine and treat the prosecutrix, Beverly Vail Sand, in the emergency room at the Anadarko Muncipal Hospital, and further, that the patient was emotionally quite disturbed. He stated that he observed a bite mark bruise on the inner aspect of her thigh and that the entrance to the vagina had been abraded. He further testified that on that night he performed an aspect study of the vaginal contents of the prosecutrix and that the examination did not reveal any sperm present in the vagina. He stated that he observed the prosecutrix' hymen had been recently torn, and that in his opinion the prosecutrix was a virgin prior to this probable forcible, traumatic intercourse. In reference to being asked whether or not the prosecutrix could be considered naive, he testified that the prosecutrix' work was that of a missionary, that she was expectant of love from everyone, and that perhaps in this world this thinking is naive.

Stan Stonum testified that he was the manager of the Redskin Theater located at 221 West Broadway in Anadarko, Oklahoma. He further stated that on March 6, 1974, at approximately 9:10 p. m., he was standing in the theater watching the last few minutes of the show when the prosecutrix ran up behind him and asked him to help her. Upon noticing that she was naked, he took her to the storeroom and gave her a coat and a pair of old khaki pants to wear. He testified that he tried to settle her down and thereafter called the police. He further testified that the address, 227 West Central Boulevard, was approximately two blocks south of the theater.

The prosecutrix, Beverly Vail Sand, testified that she was presently living at 2370 North Broadway in Moore, Oklahoma, and that she was 24 years of age. She stated that prior to coming to Anadarko she had been going to college in Bloomington, Illinois, and that she came to Anadarko to teach the Baha'i' faith, especially, because there were many Indians in the area. She further stated that upon her arrival in Anadarko she became employed as a waitress and that she resided at 227 West Central Boulevard. She testified that on March 6, 1974, she was painting portraits full time, that she came to know the defendant because he had been staying at the recovery center in Anadarko, and that he was one of the students who attended the art classes she had organized. She stated that prior to March 6, 1974, the defendant had come to her house asking to borrow some money at which time she gave him $20.00. She further stated that on March 6, 1974, the defendant again came to her house, told her that he needed to talk with someone, and she allowed him to enter because she wanted to give him some spiritual strength. She said that he appeared quite depressed, that she gave him a prayer book, and that thereafter she went to the library to get a book on Indian chiefs so that she could do some painting. She testified that shortly thereafter upon returning from the library the defendant was still in her house, that they began talking,

the defendant asked her to attend an upcoming pow-wow with him and the defendant hugged her as his "little sister." She testified that the defendant then began to ask her for money, and that as he became more insistent she began to fear him. She further testified that the defendant shut the front door and forced her into the bedroom. She said that she resisted with her feet, screamed for help once, and that after she screamed he grabbed her more tightly and told her she should not do that because both of their futures were involved. She said that once she was in the bedroom the defendant attacked her some three times gaining penetration each time; she stated that she attempted to keep her legs closed but that he forced them open. She also testified he bit her on the neck and also bit her on her leg, and further, that the whole incident was a painful experience. She lastly testified that after the final attack the defendant started walking toward the living room and she ran naked out of her house to the Redskin Theater, where one Stan Stonum gave her items of clothing to cover her naked body. Thereafter the police were called. She also stated that as she ran out of the apartment she heard the defendant say loud enough for her to hear, "where's my gun?"

Arthur Rodgers testified that he was the Chief of Police in Anadarko, Oklahoma, and that he was so employed on March 6, 1974. He further testified that he was informed of the alleged rape, that he had the scene secured and ordered an immediate examination of the reported victim. He then identified certain articles of clothing which were found at the scene of the alleged rape. One of these items was a receipt found in a shirt on the floor by the bed at 227 Central Boulevard, the scene of the alleged rape. This receipt had been given the defendant upon release from jail on that same day. He further testified that he contacted Carol Keahbone who took photographs of the scene and of the prosecutrix.

Carol Keahbone testified that she was presently News Editor for the Caddo

County Warrier and had been a news photographer for approximately six years for the Anadarko Daily News. She testified that on March 7, 1974, she had occasion to take certain photographs for the Anadarko Police Department. These photographs showed the bruises on the prosecutrix' neck and her upper thigh.

The defendant then took the stand to testify in his own behalf. He stated that he was 42 years of age, and at the time of the alleged incident he was receiving his mail at 900 West Kentucky. He stated that prior to the alleged incident he had met the prosecutrix while he was a resident at the Anadarko Recovery Center, which is a recovery center for people with alcoholic problems. He stated that at this time he worked part time driving the recovery center's van and that when the prosecutrix set up the art classes at Hog Creek, just west of Anadarko, he drove the van that carried the students and the prosecutrix to said classes. He further testified that while at the recovery center he had several occasions to meet the prosecutrix and that they would walk in the park and talk about art. He stated that on February 28, 1974, he had an occasion to be in the Post Office and met the prosecutrix, at which time she offered to buy his lunch and he accepted. They then walked to the prosecutrix' house where he left some clothing which he was going to take to the laundry. He also testified that his birthday was the week end prior to March 6, 1974, and that he celebrated the week end by getting intoxicated and ultimately incarcerated in the Anadarko City Jail. He testified that he was released from jail approximately noon Wednesday on March 6, 1974, and that he consumed a small quantity of alcohol, but that he was not intoxicated. He further related that he decided to go to Lawton, Oklahoma, and that upon arriving on Central Boulevard he remembered that his clothes were at the prosecutrix' house and he then decided to stop at the prosecutrix' house and change clothes. He testified that while at the prosecutrix' house he and the prosecutrix mutually engaged in necking and heavy petting, but that they did not engage in sexual intercourse at any time. He testified that while engaging in such activity he felt that it was getting too serious, that he left her home, and that she was greatly upset because he was leaving.

The defendant's first and second propositions of error will be discussed jointly as they have commonality of subject. Defendant's first proposition of error asserts that the trial court erred in sustaining the State's Motion in Limine and also erred in overruling defendant's Motion in Limine. The defendant's second proposition asserts that the trial court erred in admitting testimony of prosecuting witness and Dr. A. C. Roberson concerning the prosecuting witness' religious beliefs, that they were improper and irrelevant, and were used solely to inflame and prejudice the jury against the defendant.

The defendant argues that in sustaining the State's Motion in Limine the defendant was precluded from questioning the prosecuting witness about her boy friend which was relevant and material to the issues and the defendant's defense and thus, the defendant was thereby prejudiced.

In the absence of any definitive authority in Oklahoma on such pretrial preclusionary motions, this Court takes notice of the Texas Supreme Court's decision in Bridges v. City of Richardson, 163 Tex. 292, 354 S.W.2d 366 (1962), wherein that court stated:

"The purpose in filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case or on the rights of the parties to the suit. It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which a motion in limine is intended to reach."

■ The State's Motion in Limine was sustained only to the point that no evidence would be permitted to be introduced in the case with respect to any boy friends that the prosecutrix had, of any race, unless they were introduced to show previous unchaste character by attempting to show that the prosecuting witness had engaged in sexual activities with said individuals. We observe such restriction was proper in light of Shapard v. State, Okl.Cr., 437 P.2d 565 (1967). After a careful examination of the entire record we fail to find any relevant nexus between the defendant's defense and the proposed matter which was excluded by the trial court's sustaining the State's Motion in Limine. We find such matter would have been irrelevant, inadmissible, and thus, was properly excluded. We therefore find this contention of the defendant to be without merit.

The defendant further contends that overruling the defendant's Motion in Limine and thereby allowing the State to introduce testimony regarding the religious convictions and beliefs of the prosecuting witness resulted in inflaming the jury and thereby prejudicing the defendant.

■ The introduction or refusal of evidence is a matter for the exercise of discretion by the trial court. The action of the court on such a matter will not be disturbed except for an abuse of discretion. See, United States v. Acree, 10 Cir., 466 F.2d 1114 (1972). This Court has previously held that a judgment of conviction will not be reversed on the ground of improper admission or exclusion of evidence unless after examination of the entire record it appears that there has probably been a miscarriage of justice, or substantial violation of some constitutional or statutory right of the defendant. See, Henderson v. State, Okl.Cr., 385 P.2d 930 (1963). In reviewing the admission of the testimony concerning the religious convictions and beliefs of the prosecuting witness, we find no abuse of discretion by the trial court. Further, we fail to find that any prejudice resulted to the defendant as a result of the admission of such testimony. For the above stated reasons we find defendant's proposition of error to be without merit.

■ Defendant's third proposition of error asserts that the evidence is insufficient to sustain a conviction of first degree rape as the record is void of any competent evidence of the prosecuting witness' resistance to the accused as required by 21 O.S.1971, § 1111. This Court has repeatedly held that a rape victim is not required to do more than her age, strength, surrounding facts, and all attending circumstances make it reasonable for her to do in order to manifest her opposition. See, Roberson v. State, Okl.Cr., 483 P.2d 353 (1971) and Holmes v. State, Okl.Cr., 505 P.2d 189 (1972) and Strunk v. State, Okl. Cr., 450 P.2d 216 (1969). The prosecutrix' testimony regarding her resistance to the perpetrator of the rape is illustrated in the following excerpts of the record wherein it states:

"A. At the time that he pushed the door shut, I made a move for the door immediately following that and he grabbed me by the arms and pushed me down in the chair by the door. And he . . he . . he asked me again for the money. And I could feel his strength, you know, it was a lot greater than mine was, when he was holding me.

"Q. Where did he have a hold of you?

"A. By the arms.

"Q. All right, and was he holding on to you when he had you in the chair, was he continuing to hold on to you or did he release you?

"A. No, he had a continual hold on me.

"Q. O.K., and then what happened next?

"A. He asked me for the money, I again told him that I didn't have it. I told him to look for it and he said he wouldn't. And I wanted to get out of that hold and so I . . I . . I said let me look, and I did. I went . . he allowed

me to do that and I went to my purse and I got out my billfold and I showed him that there was nothing in the billfold, and that there was only one penny in the change part. And then . . he was satisfied with that, and after that he begin to push me towards the bedroom. He begin to . . he forced me and I resisted with my feet by trying to get down here but he'd, you know, lift me and try to push me up towards the bed. I screamed 'help' once, hoping that the people upstairs would hear me, because I'd heard them earlier moving up there. When I screamed he grabbed me tighter and came close to me with his face, and almost through clinched teeth, he told me that I shouldn't do that and that both of our futures were involved —something like that, I don't remember exactly.

"Q. All right, Beverly, as he was telling you not to scream or not to do that did he still have a hold of you at that time?

"A. Yes, he did.

"Q. And what happened after that?

"A. Well he pushed me into the bedroom, and pushed me down on the bed . . on my back down . . on my back, pulled down my pants and my underpants and ah . . I don't remember whether he pulled his pants down or just opened his fly, but he attempted to penetrate me, and he did.

"Q. All right, did he attempt to penetrate you or did he in fact penetrate you?

"A. He continued until he did.

"Q. Beverly, why didn't you scream the second time?

"A. I was scared of bodily harm. I was . . I felt his strength was a lot greater than mine and I didn't think I could beat him physically.

"Q. How much do you weigh, Beverly?

"A. Between 110 and 115." (Tr. 50–52)

We feel that in light of this testimony competent evidence existed whereby the jury did reasonably conclude that the prosecutrix met the degree of resistance required which must be exerted against the perpetrator of the rape. We therefore find the defendant's third proposition to be without merit.

█ The defendant's final proposition of error asserts that the evidence as a whole is contrary to the verdict. In Haga v. State, Okl.Cr., 422 P.2d 221 (1969), this Court stated:

"However, this rule has been limited to the effect that we will carefully examine the record in cases of this character, which we have done in this case, to see that the evidence of the prosecutrix is clear and convincing, and is not inconsistent, incredible or contradictory. It is the exclusive province of the jury to weigh the evidence and determine the facts, and where the verdict is based on probable testimony, the reviewing court will not interfere with the verdict, though there is a sharp conflict in the evidence."

We have examined the record in this case and we find that the evidence of the prosecutrix to be clear and convincing and not inconsistent, incredible or contradictory. We therefore hold that the evidence is sufficient to justify the conviction of First Degree Rape. For the reasons stated, we find the defendant's final proposition of error to be without merit.

In conclusion we observe the record is free of any error which would justify modification or reversal. The judgment and sentence is accordingly affirmed.