**Jerry Paul CARTER, Ricky David Innis, and Larry Rollins, Appellants,**

**v.**

**STATE of Oklahoma, Appellee.**

**Nos. F–84–190 to F–84–192.**

Court of Criminal Appeals of Oklahoma.

Nov. 17, 1987.

---

Thomas G. Smith, Elaine Meek, Asst. Appellate Public Defender, Patti Palmer, Deputy Appellate Public Defender, Norman, for appellants.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellants, Jerry Paul Carter, Ricky David Innis and Larry Rollins, were jointly tried by jury for the crime of Robbery with Firearms in violation of 21 O.S.1981, § 801 in Case No. CRF–83–17 in the District Court of Johnston County. Appellant Rollins was charged After Former Conviction of Two Felonies. Each appellant was represented by counsel. The jury returned a verdict of guilty and set punishment for each appellant. Carter was sentenced to ten (10) years'; Innis was sentenced to five (5) years'; and Rollins was sentenced to forty (40) years' imprisonment. The trial court sentenced each appellant in accordance with the jury's verdict. From these judgments and sentences, appellants appeal to this Court. Their cases will be consolidated for purposes of this appeal.

During the evening of March 30, 1983, at approximately 8:00 p.m., an armed robbery

occurred at Grady's cash and carry convenience store in Mannsville, Oklahoma. Ms. Hetzel, an employee of the convenience store, was working that evening. She observed two men, one carrying a shotgun, enter the front door of the store. Ms. Hetzel described the gunman as wearing blue jeans, a black leather motorcycle jacket, a small billed cap and a red bandana around his face. When the gunman pointed a sawed off shotgun at Ms. Hetzel, she noticed black tape around the handle. Ms. Hetzel described the second man as wearing blue jeans, a blue bandana around his face and a big sloppy hat pulled down on his head.

The gunman placed the barrel of the gun into Ms. Hetzel's neck and demanded the money from the cash register. Ms. Hetzel observed the gunman's red bandana slide down to his lower lip on three occasions. This enabled her to make a positive identification of the gunman. Ms. Hetzel gave the man approximately $600.00 to $700.00 in currency in a dark blue vinyl zipper bag and rolls of change in a blue-green canvas bag. The men placed the money bag into a pillowcase. They backed their way out of the front door and ran.

On the same evening, Ms. Cadberry was working as a cook in a restaurant across the street from the convenience store. At approximately 8:10 p.m., she heard tires squealing and gravel flying. Ms. Cadberry testified that she stepped outside, where she observed a dark colored vehicle, which she thought to be a Firebird, "zoom" down the highway toward Ardmore.

While on duty that same evening, Officer Sam Highnight of the Ardmore Police Department, received a radio broadcast concerning a robbery and a possible escape vehicle. Officer Highnight observed a 1978 dark green Pontiac Firebird heading west toward Ardmore at a high rate of speed. Officer Highnight pulled the vehicle over and found three men inside. Officer Highnight shined his flashlight into the vehicle and observed a shotgun stuck between the front passenger seat and the console. The shotgun was later identified as the same shotgun with the black taped handle used in the robbery. The men were ordered out of the car, patted down and arrested. Seven shotgun shells were found in the lining of the gunman's jacket.

The Firebird was impounded and searched. Sergeant Dennis Adams of the Ardmore Police Department and Bob McQueen of the Carter County Sheriff's Office inventoried the items found in the vehicle. The following evidence was retrieved from the car: a pillowcase found underneath the back of the passenger's seat; a blue bandana found in the back seat; a black leather motorcycle jacket and a small billed cap found in the trunk; and a dark blue zipper money bag and a blue-green cloth bag. The bags contained a total of $821.00. The money bags were found inside a pillowcase.

Appellant Carter was identified as the driver of the getaway car; appellant Innis was identified as the accomplice; and appellant Rollins was identified as the gunman.

In his defense, appellant Innis called Bill Thomas, acting Sheriff for the Johnston County Sheriff's Department. Mr. Thomas identified defendant's Exhibit No. 1 as the radio log kept by the Sheriff's Office and defendant's Exhibit No. J as the phone log by the dispatcher. The phone log indicated that the call concerning the Mannsville robbery included information that a cream-colored 1982 Ford LTD might have been involved in the robbery.

No appellant testified on his own behalf. However, appellant Innis was called to testify as a witness on behalf of his co-defendant Rollins. Appellant Innis admitted riding around and drinking with the other two men on the evening of the robbery. Appellant contended, however, that they had seen people in a Ford LTD throw the pillowcase out of their car. He claimed that he and his friends had simply stopped and picked up the pillowcase.

■ In the first assignment of error, appellants contend that the evidence presented at trial was insufficient to support the conviction of Robbery With Firearms. In *Spuehler v. State*, 709 P.2d 202 (Okl.Cr. 1985), this Court declared that, when re-

viewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. Accordingly, viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence from which any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. This assignment of error is without merit.

In the second assignment of error, appellants assert that the in-court identification of appellant Rollins by Ms. Hetzel was erroneously admitted into evidence at trial, therefore, prejudicing their right to a fair trial. Appellants predicate this argument on a pretrial "showup."

On the night of the robbery, Oklahoma Highway Patrolman, Roger Lee, arrived at the convenience store at approximately 8:45 p.m. When Patrolman Lee arrived, Ms. Hetzel had already gone home. Patrolman Lee drove to Ms. Hetzel's residence and then drove Ms. Hetzel back to the store, where she gave a description of the robbery and robbers. Thereafter, Patrolman Lee drove Ms. Hetzel to the Ardmore Police Station for the purpose of making an identification of the arrested suspects.

Upon arrival at the police station, Ms. Hetzel identified the money bags in the Trans Am as the ones taken from the store. Ms. Hetzel was then being escorted into the police station, when she looked through a window and observed the three suspects in the lobby. Aside from the three suspects, all other persons in the lobby were police officers. She identified appellant as being the man who carried the shotgun. Ms. Hetzel could not identify the two other suspects as being involved in the robbery. Specifically, appellants assert that this "showup" was impermissibly suggestive as to Rollins' identification.

■ *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), teaches that such a pretrial showup is not suggestive. In *Kirby* the victim of a robbery

entered the police station and observed the three men sitting around a table, he immediately identified them as being the men who had robbed him two days earlier. The United States Supreme Court affirmed the Illinois Appellate Court and held the identification to be proper.

We now focus on whether the in-court identification was reliable under the totality of the circumstances. *Chatman v. State,* 716 P.2d 258 (Okl.Cr.1986). In *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set forth five factors to be considered when determining whether an in-court identification was tainted by a pretrial confrontation. These factors include: 1) the prior opportunity of the witness to observe the defendant during the alleged criminal act; 2) the degree of attention of the witness; 3) the accuracy of the witness' prior identification; 4) the witness' level of certainty; and 5) the time between the crime and the confrontation.

Applying these factors accordingly, we find the following: 1) Ms. Hetzel viewed appellant Rollins inside a well-lighted convenience store from no more than ten feet. Ms. Hetzel observed appellant's bandana slide down to his lower lip three times; 2) Ms. Hetzel testified that each time she attempted to look elsewhere, appellant would order her to "Look at me!"; 3) Ms. Hetzel's pre-trial description was substantially accurate; 4) Ms. Hetzel positively identified appellant at the showup and never waivered in her certainty; and 5) she identified appellant Rollins at the showup at the police station approximately an hour and a half after the commission of the robbery.

■ Under the totality of the circumstances, we find that Ms. Hetzel's courtroom identification was based upon her observations during the commission of the robbery. Therefore, we find that the in-court identification of appellant Rollins was proper.

Appellants assert in the third assignment of error that the trial court erred in permitting evidence of appellant Rollins' use of

seven aliases to be admitted at trial. Specifically, appellants claim that the use of aliases conveyed the impression that appellant Rollins was a professional criminal, thereby denying them a fair trial.

Title 22 O.S.1981, § 304, provides:

An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit.

■ In construing this statute, this Court stated in *Strunk v. State*, 450 P.2d 216 (Okl.Cr.1969) that an information may be amended in matters of either form or substance when it can be done without prejudice to the substantial rights of the accused. We have reviewed the record and find no prejudicial error. This assignment of error is without merit.

The fourth assignment of error asserts that the trial court erred in the second stage of the trial, by admitting into evidence two court files containing the records of appellant Rollins' prior felonies. Specifically, appellants complain about State's Exhibit No. 19, which revealed that appellant had committed the offense of Burglary, Second Degree, After Former Conviction, and State's Exhibit No. 20, which revealed that appellant's suspended sentence had been revoked due to criminal activities. Both files also contained the informations from the previous charges.

In *Jones v. State*, 456 P.2d 613 (Okl.Cr. 1969), this Court stated that the information for a previous conviction should not be introduced for consideration by the jury, as proof of former convictions. This Court further stated that the former judgment and sentence, coupled with proper identification of the documents and the defendant is sufficient to meet the requirements.

■ In the process of reviewing each exhibit cited by appellants, this Court found irrelevant, cumulative and needless documentation in the files. While we agree that some documents were relevant as to identity, the trial judge should have deleted the extraneous information from the documents. If this were a closer case, we would feel compelled to modify appellant Rollins' sentence. However, in this particular case, considering the overwhelming evidence presented at trial, we are inclined to treat such error as harmless. Moreover, the record reveals that the jury was instructed under 21 O.S.1981, § 51(B), that they could sentence appellant Rollins for a term not less than twenty years nor more than life. The jury, however, on a finding of guilty after two former convictions of a felony, sentenced appellant to forty years. As stated above, under these circumstances, we view the error as harmless.

■ In the fifth assignment of error, appellants assert that the trial court erred in permitting a packet ("pen pack") of information to be admitted into evidence as proof of appellant Rollins' former felony convictions. Specifically, appellants argue that the packet contained inadmissible and irrelevant information which served only to prejudice appellant Rollins' right to due process of law. We do not agree.

This packet contained a Certificate of Parole signed on behalf of the Secretary of State; a prison photograph with prison numbers; a set of fingerprints; and two judgments and sentences of prior felony convictions. Initially, we note that the trial judge must use extreme caution in admitting portions of a prison record, including fingerprints and photographs, because of the possible prejudice that may result. *See Hill v. State*, 648 P.2d 1268 (Okl.Cr.1982). However, a review of the record indicates that the trial court did exercise caution before admitting the "pen pack" into evidence. The trial court excised from the fingerprint page a previous charge against appellant. The court also removed from the exhibit a page ordering the revoking of a suspended sentence. Moreover, we find the evidence to be relevant as to identity. It was counsel for appellant Rollins' defense who belabored the fact that the custodian of both files could not identify appellant as being the same person named in the

files. Therefore, we find that appellant Rollins was not prejudiced by the admission of his prison records in this case.

■ In the sixth assignment of error, appellants contend that improper conduct of the prosecutor deprived them of a fair trial. We observe, initially, that every instance of the alleged error cited by appellants, except for the first, has been waived, due to the failure to object to any of these remarks at trial. *See Freeman v. State*, 721 P.2d 1331 (Okl.Cr.1986). Therefore, all but fundamental error is waived. We have reviewed all comments cited by appellants for fundamental error and have found none. However, we note that the first comment cited by appellants as error was objected to at trial. The trial court sustained the objection and admonished the jury to disregard the comment. Error, if any, is usually cured by admonishing the jury unless the error appears to have determined the verdict. *Mahorney v. State*, 664 P.2d 1042 (Okl.Cr.1983). We find that any error which may have occurred was cured by the admonition.

In the final assignment of error, appellants allege that they were denied a fair trial because of prosecutorial misconduct. Specifically, appellants claim that the prosecution did not deliver to the defense a statement made by Ms. Hetzel to the police prior to trial. In the statement, Ms. Hetzel described the robber as having a beard. Appellants claim this statement could have been used for impeachment purposes. Appellants also claim that the State failed to provide the defense with an inventory of the items taken from the car.

As the Supreme Court of the United States stated in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. Moreover, the Supreme Court stated in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) that the prosecutor is not required to deliver his entire file to defense counsel, but only to

disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose. The Supreme Court also noted in *Bagley* that the evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

■ After a review of the record in the present case, we cannot say that the omissions by the State undermined our confidence in the outcome. The State claimed the unsworn statement of Ms. Hetzel as work product. However, the defense was given a copy of Ms. Hetzel's statement at trial. Moreover, the defense was free to cross-examine the witness on any relevant subject, including possible discrepancies in her description of the robber. The constitutional error, if any, in this case was the State's failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination. As discussed above, such suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial.

■ The record also reveals that the defense had an opportunity to view all the evidence confiscated from the car. However, counsel for the defense chose to interview the evidence officer in custody of the evidence over the phone, rather than in person. This strategy led to an honest mistake on what piece of evidence was being discussed during the conversation. This mistake would not have occurred had counsel taken the time to view the evidence firsthand. Moreover, appellants have failed to show any prejudice resulting from the introduction of the pillowcase into evidence at trial. The money bags were placed in the pillowcase at the time of the robbery. We find no error which under-

mines our confidence in the verdict. Appellants had a fair trial.

The judgments and sentences appealed from are AFFIRMED.

BUSSEY, J., concurs.

PARKS, J., concurs in part/dissents in part.

PARKS, Judge, Concurring in Part and Dissenting in Part:

I cannot condone remarks by the prosecutor in his closing argument. The remarks certainly could have influenced the jury, and I would modify the sentences of appellants Rollins and Carter.

I was particularly offended by remarks comparing appellants with Hitler's armies:

Ladies and gentlemen, in the 1930's, a dark cloud hovered over the European continent when a great bully that called themselves Nazis, took control of Germany. Later, they imprisoned six million people in prison camps while the rest of the world sat by and did nothing. In 1936, they violated the Treaty by moving troops into the Rhineland while the Allies sat by and did nothing....

....

And the next year [Germany] took Poland while the rest of the world sat by and did nothing. But then the next year, he turned his German Armies in the French and he turned his German Air Force on the British and he even bombed London itself, almost to oblivion. And oh, what a lesson they paid to learn—what a price they paid in blood, sweat, tears and lost lives, to learn that the only way to stop a bully is to confront one. Ladies and gentlemen, Linda Hetzel, when she took the stand, she confronted three bullies in the only way she knew how....

Now, Ladies and gentlemen, after the end of World War II and the Holocaust, many people wondered how people could have sat by while all of this happened and not take any action.

Well, I guess one philosopher summed it up best when he said, "Evil will prevail in this world if enough good people just sit by and do nothing."

Ladies and gentlemen, that is what the defense would like for you to do, to go back into the jury room and argue about a bunch of little inconsistent technicalities that don't amount to a hill of beans when compared to the hard facts of this case and then sit back and do nothing.

This Court has condemned similar comments by a prosecutor in the past as being unnecessary and calculated to inflame the jury. *Meggett v. State*, 599 P.2d 1110, 1114 (Okla.Crim.App.1979) (comparisons to Charles Manson, Al Capone and Patty Hearst); *Ward v. State*, 633 P.2d 757, 758–59 (Okla.Crim.App.1981) (reversed when prosecutor compared defendant to Sirhan Sirhan and James Earl Ray).

The prosecutor also equated the robbery and its effect on the victim with the assassination of President Kennedy and the bombing of Pearl Harbor:

... A person remembers more clearly and remembers longer the traumatic experiences.... That is the way human nature works. Now, you might not remember what you were [sic] May 30th, 1983, it really wouldn't stick out in your minds unless you were reminded of something.... [I]f I asked you what you were doing on a certain day twenty years ago, what you were doing on the 22nd day of November, 1980—or 1963, you might not be able to remember that. However, if I asked you ... where you were and what you were doing on the afternoon that you learned about the tragic death of John F. Kennedy, November 22nd, 1963, I'm sure that many of you would be able to recall the time and how you learned of it and who you learned it from and where you were....

And even some dates stand out in our minds when things happen. ... I'm sure you remember learning of the terrible military defeat we suffered at the hands of the Japanese empire after their sneak attack. You may even have recalled President Roosevelt on the radio telling the country as he declared war, that De-

cember 7th, 1941, that it would be a day that would live an eternity.

Ladies and gentlemen, I submit to you that to Linda Hetzel, March 30, 1983, and to Darla Pittman, March 30th, 1983, is a day that will live in infamy. It will be a day that stands out and they will remember for the rest of their lives because this is one of those most terrible and tragic experiences that has ever happened to them. Linda Hetzel told you that she remembers that face and she'll never forget it. She has nightmares about that face. She'll never forget it. I pray to God that someday she will be able to forget that face but at this time, that hasn't happened.

This Court has held that it is error to make remarks inflaming the jurors and aimed at the vindication of community outrage. *Franks v. State,* 636 P.2d 361, 366 (Okla.Crim.App.1981); *Jones v. State,* 610 P.2d 818, 820 (Okla.Crim.App.1980). It is also error to evoke sympathy for the victim. *Tobler v. State,* 688 P.2d 350, 354 (Okla.Crim.App.1984).

It is true that the prosecutor's comments here went largely unchallenged. However, as the *Ward* Court said, "in cases such as the present one where nearly the whole closing argument is fraught with error, the proceedings take on a fundamental unfairness which this Court cannot condone." *Ward,* 633 P.2d at 759. But I do not think the remarks warrant reversal here due to the other evidence presented. Consequently, I would modify appellant Rollins' sentence to twenty (20) years. On the same basis, I would modify appellant Carter's sentence to five (5) years.