**Richard Earl GRADY, Jr., Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–96–23.

Court of Criminal Appeals of Oklahoma.

Aug. 27, 1997.

As Amended Sept. 5, 1997.

Rehearing Denied Oct. 1, 1997.

Publication Ordered Oct. 28, 1997.

Irven R. Box, Oklahoma City, for Defendant at trial.

Danny G. Lohmann, Appellate Defense Counsel, Norman, for Appellant on appeal.

Brad Leverett, Asst. Dist. Atty., Altus, for the State.

W.A. Drew Edmondson, Atty. Gen. of Oklahoma and Steven E. Lohr, Asst. Atty. Gen., Oklahoma City, for appellee.

## *OPINION*

PER CURIAM.

Richard Earl Grady, Jr., was tried by jury and convicted of First Degree Murder in violation of 21 O.S.1991, § 701.7(C), in the District Court of Jackson County, Case No. CF–95–42. In accordance with the jury's recommendation the Honorable Richard Darby sentenced Grady to life imprisonment without the possibility of parole.[1] Grady has perfected his appeal of the conviction. After thorough review of the entire record before us on appeal we affirm.

Grady kept Olivia McGowan at his in-home day care center. On January 26, 1995, an Altus emergency room doctor treated nine-month-old Olivia for an ear infection and cold. Other than those complaints Olivia was in good health and showed no signs of head injury. Deborah McGowan left Olivia with Grady at 6:45 a.m. on January 27. Olivia was sleepy from medication but appeared normal otherwise. Between 11:00 and 11:50 a.m. Grady's wife saw Olivia alert, holding and drinking from her bottle, smiling and giggling. She saw no bruises or signs of head injury. At approximately 12:20 p.m. emergency medical personnel found Olivia unconscious and having seizures. Olivia was taken to Altus Air Force Base Hospital and then to Children's Hospital in Oklahoma City. She never regained consciousness and was pronounced brain dead on January 28. An autopsy revealed bruises, skull fractures, a large subdural hematoma, a swollen brain, and extensive retinal hemorrhaging. The medical examiner testified the injuries were consistent with shaken baby syndrome and blunt force trauma.

In his first proposition Grady claims the jury was not properly instructed as to the elements of the offense. He did not object to the instructions at trial and has waived all but plain error. Grady was convicted of first degree murder in the commis-sion of child abuse, which requires the willful or malicious injuring, torturing, maiming or use of unreasonable force resulting in the death of a child.[2] Instruction No. 8 read:

> No person may be convicted of murder in the first degree unless the state has proved beyond a reasonable doubt each element of the crime. The elements are: FIRST, the death of a human; SECOND, the death occurred as a result of an act or event which happened in the commission of a Child Abuse; THIRD, caused by the defendant while in the commission of a Child Abuse; FOURTH, the elements of the Child Abuse the Defendant is alleged to have been in the commission of which are as follows: (A) Wilfully [sic] or maliciously; (B) injuring, torturing, maiming, or using unreasonable force; (C) upon a child under the age of eighteen (18).

This accurately instructed the jury on the elements of child murder. Instruction 10 defined several terms for the jury:

> *Maiming*—Infliction upon another of a physical injury that disables, performed with the intent to cause injury.
>
> *Malicious*—The term imports a wish to vex, annoy, or injure another person.
>
> *Torture*—Infliction of severe pain by unlawful acts.
>
> *Unreasonable Force*—More than that ordinarily used as a means of discipline.
>
> *Wilful* [sic]—Purposeful. "Wilful" [sic] does not require any intent to violate the law, *or to injure another,* or to acquire any advantage. [Emphasis added.]

The definitions are accurate as a matter of law.[3] Grady complains the definition of "willful" was confusing in the context of this crime and allowed the jury to convict him even if they found he had no intent to injure Olivia. We agree this instruction is confusing and ought not to be given.

---

1. The prosecution filed a Bill of Particulars alleging one aggravating circumstance in support of the death penalty. The jury did not find the aggravating circumstance was present.

2. 21 O.S.1991, § 701.7(C).

3. 21 O.S.1991, § 92, defines "willfully" as a purpose or willingness to commit the act in question, with no intent to violate the law, or to injure another, or to acquire any advantage.

Grady relies on *Hockersmith v. State* [4] and *Bannister v. State* [5] for his claim that the error in instructions is reversible. In *Hockersmith*, the jury was not instructed on the specific elements of child abuse murder and received the confusing "willful" instruction above. We held this combination of instructions required reversal because the jury was not told the defendant had to act in a willful or malicious manner, with intent to injure, torture, maim, or use unreasonable force, as the statute requires. The definition of "willful" did not require intent to injure. In the absence of a proper instruction on the elements of child murder this instruction allowed the jury to convict Hockersmith without finding he had any intent to injure the victim, which directly contradicted the statutory elements of the crime. [6]

In *Bannister*, the "willful" instruction was given along with an instruction on the elements of the crime. In that case, the instruction included but did not clearly set forth the elements of child abuse murder. We relied on *Hockersmith* and reversed. *Bannister* also contained two other grounds for reversal: a failure to instruct regarding accomplice testimony, and improper instruction on other crimes evidence. [7] Although we determined that the inclusion of the "willful" instruction was plain error, it was the combination of error in that case which required reversal.

Grady's jury was properly instructed on the elements of the crime of child abuse murder, including the requirement of intent to injure. [8] We hold that the phrase "intent to injure" in the definition of "willful", standing alone, does not require reversal. This proposition is denied.

■ In Proposition II Grady claims the evidence was insufficient to sustain his conviction. Insofar as he relies on the error in instructions discussed in Proposition I, this claim must fail. Grady also argues that, even under proper instruction, the State did not prove he willfully or maliciously used unreasonable force to cause Olivia's death. This claim fails to consider the evidence presented at trial. Testimony showed: (1) the still-immobile Olivia had three separate unexplained bruises after being put in Grady's care; (2) Olivia was often fussy and Grady would become angry and rough with her; (3) Grady especially became angry when changing Olivia's diapers, and sometimes carried her to the changing table by one arm or leg; (4) while Olivia cried hysterically in her baby seat, Grady said she was always like that, complained he couldn't do anything with her, and kicked the seat into a glass door; (5) aside from an ear infection and cold, Olivia was sleepy but alert when her mother left her with Grady at 6:45 a.m. on January 27; (6) before 11:50 a.m. that day Olivia was alert, giggling, holding her bottle and drinking; (7) Grady was the only adult with Olivia from 11:50 a.m. until emergency personnel arrived; (8) Grady told a doctor he was changing Olivia's diaper when she became rigid and unresponsive; (9) after a complete medical examination and autopsy the medical witnesses agreed Olivia's injuries would have resulted in immediate severe symptoms, and she would have been blind, unable to eat, hold objects, smile, or respond in any way; and (10) the medical witnesses agreed that these injuries could not have resulted from a cold or ear infection. This circumstantial evidence tends to exclude every reasonable hypothesis other than guilt, [9] and this proposition is denied.

■ Grady claims in Proposition III that his trial counsel was ineffective for failing to call a medical witness who told police she thought the injuries occurred before Olivia went to Grady's on January 27. [10] Gra-

4.   926 P.2d 793 (Okl.Cr.1996).

5.   930 P.2d 1176 (Okl.Cr.1996).

6.   *Hockersmith*, 926 P.2d at 795.

7.   *Bannister*, 930 P.2d at 1179.

8.   In closing, the prosecutor several times told the jury it had to find Grady intended to injure Olivia. These comments bolster the instructions' emphasis on intent.

9.   *Mayes v. State*, 887 P.2d 1288, 1301–03 (Okl. Cr.1994), *cert. denied*, 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995).

10.  Grady contemporaneously filed a motion to supplement the record on appeal and application for evidentiary hearing on this issue. He asks to supplement the record with a copy of a transcript of Dr. Stewart's conversation with police, and alleges an evidentiary hearing is necessary to determine whether counsel was ineffective for

dy must show both that counsel's performance was deficient, and the deficient performance created errors so serious as to deprive him of a fair trial with reliable results.[11] There is a strong presumption that counsel's conduct was professional and Grady must overcome the presumption that counsel's conduct equaled sound trial strategy.[12] If this Court can dispose of a claim on the grounds of lack of prejudice, we need not determine whether counsel's performance was deficient.[13]

Grady cannot meet this standard. He bases his claim on counsel's failure to call Dr. Stewart, an Altus doctor who saw Olivia shortly after she was injured and before the extent of her injuries was known. Grady contends that in a telephone interview apparently conducted on January 28 Dr. Stewart told police she believed the injuries might have occurred on Thursday, January 26, rather than Friday. Although counsel did not call Dr. Stewart, he did call two witnesses in the first stage and eight in the second stage, and effectively used the State's witnesses to develop his theory that Olivia's father caused her injuries. Counsel also cross-examined Dr. Cohen, who also saw Olivia when she was initially admitted to the hospital. Dr. Cohen stated her initial opinion was that Olivia was injured early in the morning of January 27, but that opinion changed as she received a more thorough medical history and discovered the extent of Olivia's injuries. Given Dr. Cohen's testimony, counsel's decision not to call Dr. Stewart may have been reasonable trial strategy, and this Court will not second-guess counsel's motives. In any case Grady cannot show he was prejudiced by this decision. Dr. Cohen did testify her initial opinion was the injuries had occurred before Grady saw Olivia. Had Dr. Stewart testified to the same opinion, the jury would have compared it against Dr.

Cohen's changed opinion as well as those of Olivia's attending physician from Children's Hospital, the medical examiner, and a Children's Hospital supervising physician who reviewed the records and testified as an expert. All of these witnesses agreed Olivia's injuries were massive and would have caused immediate and unmistakable symptoms irreconcilable with her documented behavior on Friday. Grady cannot show a reasonable probability that, but for counsel's decision, the result of the trial would have been different. This proposition is denied.

In Proposition IV Grady claims the cumulative effect of the errors above deprived him of his right to a fair trial. We have determined that the error in Proposition I does not require relief, and find no error in Propositions II and III. There can thus be no cumulative error and this proposition must fail.

## Decision

The Judgment and Sentence of the trial court is AFFIRMED.

CHAPEL, P.J., and JOHNSON, J., concur.

LUMPKIN, J., concurs in result and files opinion.

STRUBHAR, V.P.J., dissents and filed opinion joined by LANE, J.

LUMPKIN, Judge, concurring in result.

I agree the judgment and sentence in this case should be affirmed. However, I am uncomfortable with language dealing with ineffective counsel, and therefore must concur in result.

---

failing to call Dr. Stewart. Grady seeks to supplement the record with this material under Rule 3.11(B)(3)(b), 22 O.S.Supp.1996, Ch. 18, App., *Rules of the Court of Criminal Appeals.* He has failed to include the affidavits in support of his motion required under that Rule. The Motion to Supplement Record and Application for Evidentiary Hearing are denied.

**11.** *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

**12.** *Hammon v. State,* 898 P.2d 1287, 1309 (Okl. Cr.1995); *Camron v. State,* 829 P.2d 47, 55 (Okl. Cr.1992).

**13.** *Coleman v. State,* 693 P.2d 4, 7 (Okl.Cr.1984); *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

Initially, if this Court is disposing of the ineffective counsel claim on the second prong, there is no sense in discussing whether the attorney's decision not to call a witness to testify constituted "reasonable trial strategy." Accordingly, I view this as dicta.

Second, I believe the discussion of the test enunciating the "prejudice" prong of *Strickland* could be more thorough. To show "prejudice", Appellant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable". *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). To show "prejudice", an appellant must show that his attorney's unprofessional errors "so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Lockhart,* 506 U.S. at 369, 113 S.Ct. at 842 (quoting *Kimmelman v. Morrison* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986)). In other words, there is more than mere outcome determination involved in the "prejudice" prong.

Additionally, I continue to urge this Court to adopt a unified approach when examining the sufficiency of the evidence. As I said in *White v. State,* 900 P.2d 982, 993 (Okl.Cr. 1995) (Lumpkin, J., specially concurring), I would adopt the test enunciated in *Spuehler v. State,* 709 P.2d 202, 203–04 (Okl.Cr.1985) when examining cases containing entirely circumstantial evidence.

Accordingly, I concur in result.

STRUBHAR, Judge, dissenting.

I disagree with the majority's disposition of Appellant's first proposition. In this proposition Appellant argues that fundamental error occurred when the jury was not properly instructed as to the elements of the offense charged. Appellant was charged with first degree child abuse murder under 21 O.S.1991, § 701.7(C). The trial court instructed the jury in Jury Instruction No. 8 that in order to find Appellant guilty of this crime, they must find each of the following elements beyond a reasonable doubt:

The elements are: FIRST, the death of a human; SECOND, the death occurred as a result of an act or event which happened in the commission of a Child Abuse; THIRD, caused by the defendant while in the commission of a Child Abuse; FOURTH, the elements of Child Abuse the Defendant is alleged to have been in the commission of which are as follows: (A) Wilfully or maliciously; (B) injuring, torturing, maiming, or using unreasonable force; (C) upon a child under the age of eighteen (18).

(O.R.109) The jury was also instructed in Jury Instruction No. 10 that the term "willful" means: "Purposeful. 'Wilful' [sic] does not require any intent to violate the law, or to injure another, or to acquire any advantage." (O.R.111). Appellant argues that these instructions were misleading and incorrectly allowed the jury to convict him of First Degree Murder by Child Abuse without finding that he had an intent to harm the child.

In support of his argument Appellant cites in his Brief-in-Chief to *Hockersmith v. State,* 926 P.2d 793 (Okl.Cr.1996) and, in his Reply Brief to *Bannister v. State,* 930 P.2d 1176 (Okl.Cr.1996). The defendants in both of these cases were convicted of First Degree Child Abuse Murder. Although the instructions given in *Hockersmith* and *Bannister* regarding the elements of the crime differed slightly from those given in the present case, the instructions given in both cases defining the term "willful" were identical to that given in the present case. In *Hockersmith,* this Court agreed with the defendant's argument that this definition of "willful" is "confusing, contradictory and potentially misleading." *Hockersmith,* 926 P.2d at 795. This is because in order to be convicted of First Degree Murder by Child Abuse one must be found to have committed child abuse. In 21 O.S.1991, § 843 the legislature provided that in order to be punished for having committed child abuse it must be found that the injury inflicted upon the child was willful. *Id.* This statute has a specific intent requirement which is at odds with any definition of "willful" requiring no finding of intent to injure.

In *Bannister,* this Court reaffirmed the *Hockersmith* ruling, holding that:

Although the jury instructions now at issue were taken either from statutes or the Uniform Criminal Instructions, together they allowed the jury to convict Bannister of first degree child abuse murder even if it found that he did not intend to injure the victim. Considering the context and terms employed in the child abuse murder statute, one cannot be guilty of this crime unless he or she intends to injure, torture, maim or use unreasonable force on a child. These instructions effectively and unconstitutionally relieved the State of its burden to prove all the elements of the crime charged beyond a reasonable doubt.

*Bannister*, 930 P.2d at 1178.[1]

In *Hockersmith* this Court, reviewing for plain error, found that the instructions given were incorrect and did amount to plain error requiring reversal. *Hockersmith*, 926 P.2d at 795. *See also Simpson v. State*, 876 P.2d 690 (Okl.Cr.1994). The error which occurred in the case at bar is the same as that found to have been plain error requiring reversal in *Hockersmith* and *Bannister*. I find that no different result is required in the present case. Accordingly, I would reverse Appellant's Judgment and Sentence. I am authorized to state J. Lane joins in my dissent.

---

1. Although the majority notes that *Bannister* was reversed based upon the accumulation of errors, rather than solely upon the error at issue here, a review of *Bannister* reveals that very little attention was actually given to the other errors noted in that case. Rather, upon reading *Bannister* it appears the other errors were addressed as an aside simply to assure that they not be repeated at the second trial. *Bannister*, 930 P.2d at 1178.