1999 OK CR 37

**John Camp BERNAY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–97–461.**

Court of Criminal Appeals of Oklahoma.

Oct. 12, 1999.

As Corrected on Denial of Rehearing Dec. 7, 1999.

Bert A. Richard, Jr., Ben Brown, Assistant Public Defenders, Oklahoma City, Oklahoma, for defendant at trial.

Lou Keel, Sandra Howell–Elliot, Assistant District Attorneys, Oklahoma City, Oklahoma, for the State at trial.

Wendell B. Sutton, Assistant Public Defender, Oklahoma City, Oklahoma, for appellant on appeal.

W.A. Drew Edmondson, Attorney General, Jennifer B. Miller, Assistant Attorney General, Oklahoma City, OK, for appellee on appeal.

## OPINION

JOHNSON, Judge.

¶1 John Camp Bernay, hereinafter referred to as Appellant, was tried by jury in Oklahoma County District Court, Case No. CF–95–1075, before the Honorable Charles L. Owens, District Judge, for First Degree Malice Murder, in violation of 21 O.S.1991, § 701.7(A) (Count I), Shooting With Intent to Kill, in violation of 12 O.S.Supp.1992, § 652 (Counts II and III), Pointing a Firearm, in violation of O.S.Supp.1995, § 1289.16 (Count IV), and Felonious Possession of a Firearm, in violation of 12 O.S.Supp.1994, § 1283 (Count V). The trial judge sustained a demurrer to Count IV. Count V was dismissed at the State's request after the jury's first stage verdict. The jury rendered verdicts of guilty on Count I and not guilty on Counts II and III. The jury found the following aggravating circumstances: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; (2) the defendant knowingly created a great risk of death to more than one person; (3) the murder was committed by a person while serving a sentence of imprisonment on conviction of a felony; and (4) the existence of a

probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.[1] The jury recommended a sentence of death which the trial court imposed. From this Judgment and Sentence, Appellant has perfected his appeal to this Court.

### FACTS

¶ 2 On the evening of February 8, 1995, Appellant and his girlfriend, Lucinda Wolfchief, were in Appellant's home watching television. Lucinda was twenty-eight years old at the time of the trial. She had been sniffing paint for approximately six (6) years, and the Appellant gave the young lady paint thinner and spray paint to sniff on that evening. Appellant was sixty-three years old at the time of the crime.

¶ 3 The decedent, Pamela Wolfchief, was Lucinda's mother. Pamela and her friends, Charlene Loneman, Robert Reynolds, Sr., and Robert Reynolds, Jr. were at Pamela's home, and they were all drinking. The four drove to Appellant's house to bring Lucinda back home.

¶ 4 Pamela went into the home. There is conflict between her testimony and others testimony as to whether this was a lawful entry or not. Appellant contends that it was an unlawful entry.

¶ 5 While there was some testimony that Pamela forced her way into the home, Appellant testified to the contrary. An argument ensued between the Appellant and the victim. The parties in the van heard the argument between the deceased and Appellant and approached the house at different times.

¶ 6 First, Robert Reynolds, Sr. approached Appellant's house, then a few minutes later, Robert Reynolds, Jr. and Charlene Loneman approached. There was testimony Appellant advised Pamela that Lucinda could not leave and began hitting the decedent. When Pamela tried to get up, Appellant would hit her again.

¶ 7 The occupants of the van testified that they heard an argument between the Appel-

lant and the victim, and Ms. Loneman heard the Appellant tell the victim that he would kill her. The Appellant knocked the victim down and shot her in what appears to be a gangland-type shooting, that is, a shot to the back of the head.

¶ 8 Both Reynolds, Sr. and Reynolds, Jr. were shot by Appellant. After all of these incidents, the police were called. When the police arrived, Appellant was placed into custody. Appellant claimed the victim had broken into the house along with others, and they attacked him. Then he shot them.

### ISSUES RELATING TO JURY SELECTION

¶ 9 In his second proposition of error, Appellant contends the trial court's restriction on defense counsel's *voir dire* examination resulted in the removal for cause of six prospective jurors before it was adequately established that such prospective jurors could not follow the law and consider the death penalty. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Appellant complains that he was prohibited from rehabilitating those prospective jurors by questioning each of them about specific or hypothetical factual patterns under which the prospective juror might consider the death penalty appropriate.

¶ 10 The decision whether to disqualify a prospective juror for cause rests in the trial court's sound discretion whose decision will not be disturbed unless an abuse of discretion is shown. *Douglas v. State*, 1997 OKCR 79, ¶ 7, 951 P.2d 651, 659. When this Court reviews the *voir dire* examination of potential jurors who are unclear or equivocal about their ability to consider the death penalty, we traditionally defer to the impressions of the trial court who can better assess whether a potential juror would be unable to fulfill his or her oath. *Id.* However, removal for cause of even one venire member who has conscientious scruples against the death pen-

---

1. The State dismissed the avoiding lawful arrest or prosecution aggravating circumstance imme-

diately prior to the sentencing stage.

alty but is nevertheless able to set aside those scruples and consider the penalty of death and is therefore eligible to serve on the jury is error of constitutional magnitude not subject to harmless error analysis. *Id.*

¶ 11 During *voir dire*, the trial court asked prospective jurors substantially the same question, "[c]ould you give meaningful consideration and agree to a verdict fixing his punishment at death by lethal injection if you felt that was justified by the evidence?" All of the prospective jurors of whom Appellant complains stated unequivocally that they could not assess the death penalty under any circumstances. By stating they could not consider the death penalty under any circumstances, the prospective jurors advised the trial court they could not put aside their beliefs and follow the law and the court's instructions. Because the proper inquiry was made by the trial court to determine whether prospective jurors could consider the death penalty, we find the trial court did not abuse its discretion when it did not inquire further after receiving unequivocal answers. *See Scott v. State*, 1995 OK CR 14, ¶ 11, 891 P.2d 1283, 1290, *cert. denied*, 516 U.S. 1077, 116 S.Ct. 784, 133 L.Ed.2d 735 (1996).

## ISSUES RELATING TO GUILT/INNOCENCE

¶ 12 Appellant presents two sub-propositions in his first proposition of error. In his first sub-proposition, Appellant claims the preliminary hearing testimony of Reynolds, Jr. was inadmissible because the State failed to prove Reynolds, Jr. was unavailable despite good-faith and due diligent efforts to secure his presence at trial.

¶ 13 Approximately one month before trial, Investigator Ron Chambers received the assignment to locate both Reynolds, Sr. and Reynolds, Jr. and went to Reynolds Jr.'s last known address. He discovered Reynolds, Jr. had moved approximately two or three months earlier. A neighbor informed Chambers Reynolds, Jr. usually hung out at the REST homeless shelter. The investigator checked for utilities, employment, and telephone listings. A driver's license check showed an address on North Ellison. However, that address was a vacant lot. The driver's license check on Reynolds, Sr. revealed the address of an apartment complex. However, the manager at the complex related the Reynolds had been evicted approximately six months earlier.

¶ 14 In early February, Chambers visited the REST homeless shelter. He left word with a guard who knew the Reynolds to contact the District Attorney's Office if he heard of or from them. Chambers testified he would either go by or call the REST homeless shelter almost daily. Reynolds, Jr.'s sister informed Chambers she had not spoken to either man in over a year. Reynolds, Jr.'s mother also advised Chambers that she had seen Reynolds, Jr. approximately one and one-half months earlier when he discussed going to California. Chambers made many other contacts and stated he exhausted all of the investigative techniques he acquired over his thirty-year career to locate Reynolds, Jr. After argument of counsel, the trial court found the State had conducted a reasonable search to locate Reynolds, Jr., and that Reynolds, Jr. was unavailable to testify at trial.

¶ 15 On appellate review, this Court looks to all relevant facts to determine whether such facts establish good faith and due diligence on the part of the State to secure the attendance of a witness. *Cleary v. State*, 1997 OK CR 35, ¶ 18, 942 P.2d 736, 744. Here, based on the foregoing, we find the trial court properly found these facts establish good faith and due diligence. *Id.*

¶ 16 In Appellant's second prong of this proposition, he contends the preliminary hearing testimony of Reynolds, Jr. failed to meet the standards of reliability necessary to permit its use as required by his constitutional right to confrontation. "Previous testimony may be admitted at trial if two threshold requirements are satisfied: the witness must be unavailable despite good faith and due diligence of the party calling the witness, and the transcribed testimony must bear sufficient indicia of reliability to allow the trier of fact a satisfactory basis for evaluating its truth." Appellant submits Reynolds, Jr.'s

testimony lacks a sufficient indicia of reliability because Appellant did not have an adequate opportunity to cross-examine or otherwise impeach him at preliminary hearing. Since Reynolds, Jr. was the first witness called to testify at preliminary hearing, Appellant contends defense counsel did not have the benefit of other witnesses' testimony to use during cross-examination.

¶ 17 Contrary to Appellant's assertion, we find Appellant had ample opportunity to cross-examine Reynolds, Jr. Furthermore, Reynolds, Jr.'s testimony was given under circumstances which closely approximated those of a typical trial. His testimony was made under oath and in a truth-inducing courtroom atmosphere. *See Mollett v. State,* 1997 OK CR 28, ¶ 34, 939 P.2d 1, 9. Appellant has failed to demonstrate the trial court abused its discretion when it permitted Reynolds, Jr.'s preliminary hearing testimony to be read into evidence. This proposition of error fails.

■■■ ¶ 18 In his third proposition of error, Appellant claims he was deprived of a fair trial due to the improper admission of multiple highly prejudicial and inflammatory photographs and medical examiner diagrams of the deceased's body in both stages of trial. We first address Appellant's claim as it relates to the first stage of trial. This Court has consistently held the test for admissibility of a photograph is not whether it is gruesome or inflammatory, but whether its probative value is substantially outweighed by the danger of unfair prejudice. *Hooks v. State,* 1993 OK CR 41, ¶ 24, 862 P.2d 1273, 1280, *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); *Clayton v. State,* 1992 OK CR 60, ¶ 34, 840 P.2d 18, 28, *cert. denied,* 507 U.S. 1008, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993). Photographs may, for example, depict the crime scene and the nature and location of wounds or corroborate witness testimony. *See Williamson v. State,* 1991 OK CR 63, ¶ 62, 812 P.2d 384, 400, *cert. denied,* 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). The photographs in question depict the crime scene and the wounds of the victim. They also corroborate medical and law enforcement testimony. We

note the trial judge carefully reviewed each photograph so that the photographs admitted would not be unduly gruesome and duplicitous. "Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion." *Hooks,* 1993 OK CR 41, ¶ 24, 862 P.2d at 1280.

¶ 19 Appellant additionally argues there was no legitimate reason for the introduction of the photographs because there was no dispute as to the cause of death, the location of wounds, or any other issue to which the photographs were relevant. In *Hooks,* this Court rejected a similar argument that photographs were inadmissible because neither the identity of the victim nor the injuries sustained were matters contested at trial. Accordingly, we find no abuse of discretion in the admission of the photographs in the first stage of trial.

■■■ ¶ 20 In his claim relating to the admission of the photographs in the second stage of trial, Appellant merely asserts the totality of the photographs and diagrams, as part of the evidence relied upon by the State in the second stage, resulted in a sentencing process that was too unreliable to meet federal and State constitutional requirements. Additionally, he asserts the State cannot prove beyond a reasonable doubt from the record presented that admission of the photographs and diagrams did not contribute to the verdict of death.[2]

■■■ ¶ 21 Appellant fails to explain and/or otherwise develop this claim beyond his mere bald assertions. An appellant must support his allegations of error by both argument and citation of authority. *Hamilton v. State,* 1997 OK CR 14, ¶ 45, 937 P.2d 1001, 1012, *citing Wilson v. State,* 1987 OK CR 86, ¶ 19, 737 P.2d 1197, 1204. Where this is not done, and it is apparent that the appellant has not been deprived of any fundamental rights, we will not search the books for authorities to support mere assertions that the trial court erred. *Id.* This proposition of error is denied.

■■■ ¶ 22 In his fourth proposition of error, Appellant asserts the State failed to

2. The State does not respond to this claim.

present sufficient evidence from which any rational trier of fact could find beyond a reasonable doubt the essential elements that the decedent's death was unlawful and caused with malice aforethought. Specifically, Appellant argues that his actions were justified under the so-called "Make My Day Law", 21 O.S.Supp.1995, § 1289.25. Based on Appellant's statement to the police, he heard car doors slam, people talking outside, and knocking on the door. Appellant went into the kitchen to open the door. The house was totally dark except for a light in the bedroom where he and Lucinda were at the time. As he began to open the door, Pamela shoved the door into him, knocking him down. Appellant described the decedent as angry and in a belligerent, aggressive mood. An argument and physical scuffle ensued between the two. Subsequently, both Reynolds, Sr. and Reynolds, Jr. stormed into his residence. Appellant yelled several times at the two men to get Pamela out of his residence. Reynolds, Sr. pushed and argued with Appellant. Pamela grabbed Appellant around the legs. Appellant stated he managed to make his way to the dresser in the kitchen. He retrieved his hand gun and fired three shots.

¶ 23 This Court will not interfere with the jury's verdict where there is ample competent evidence in the record to establish the guilt of the accused. *See Boyd v. State,* 1987 OK CR 211, ¶ 9, 743 P.2d 674, 676. It is the province of the jury to resolve conflicts and to reconcile testimony concerning the motives of the witnesses and other circumstances of the case. *See Raymond v. State,* 1986 OK CR 51, ¶ 4, 717 P.2d 1147, 1149–50. Further, this Court will accept all reasonable inferences and credibility choices that support the jury's verdict. *Maxwell v. State,* 1987 OK CR 198, ¶ 17, 742 P.2d 1165, 1169.

¶ 24 In this case, the evidence revealed the decedent died of a *close contact* gunshot wound to the back of the head. Additionally, the jury was instructed on Appellant's Make My Day defense and Second Degree Murder. When viewed in the light most favorable to the State, the evidence is sufficient for a rational trier of fact to find Appellant shot the decedent with the premeditated design to effect death. *Spuehler v. State,* 1985 OK CR

132, ¶ 7, 709 P.2d 202, 203. This proposition of error is denied.

¶ 25 In his fifth proposition of error, Appellant sets out eleven (11) sub-propositions to support his claim that his constitutional rights were violated when the trial court refused to disclose certain medical records pertaining to Reynolds, Jr. and when the trial court allowed inadmissible evidence during both stages of trial. In his first sub-proposition, he contends the reading of the entire preliminary hearing transcript of Reynolds, Jr. improperly inflamed the passions and prejudices of the jury and constituted reversible error. Appellant complains as to a combination of questions and answers, during cross-examination, where he contends that other crimes evidence was admitted. However, "the mere suggestion of another crime, without more, will not trigger the general rules regarding the admission of other crimes evidence." *Bear v. State,* 1988 OK CR 181, ¶ 22, 762 P.2d 950, 956. We find no error.

¶ 26 In his second sub-proposition, Appellant complains the trial court erred in refusing to disclose all of Reynolds, Jr.'s psychiatric records. After review by the trial court, said records, except for five pages deemed pertinent, were sealed by the trial court for appellate review. Appellate counsel filed a motion to check out said records, which this Court refused on June 15, 1998. Appellant asks this Court to review the sealed records for a determination of whether he was denied his federal and state constitutional right to confront his witness and/or his due process right to discovery of favorable evidence against him. This Court has already ruled on this matter. We continue to find the trial court's ruling was proper.

¶ 27 Next, Appellant sets out twenty-nine inconsistencies between Lucinda's preliminary hearing and trial testimony and asks this Court to strike her entire testimony. Appellant contends the trial court erred in refusing to strike Lucinda's testimony based on those inconsistencies and on the record evidence of her habitual paint sniffing for at least ten years.

¶ 28 The record reveals that evidence of Lucinda's addiction and inconsistent statements were before the jury so that it could make its own determination of her believability. The jury was instructed that it was the sole judge of the believability of the witnesses and of the weight to be given to their testimony. Accordingly, the trial judge did not abuse its discretion in refusing to strike Lucinda's testimony. *Lee v. State,* 1977 OK CR 48, ¶ 26, 560 P.2d 226, 231.

¶ 29 Appellant urges in his fourth sub-proposition the trial court erred in admitting his videotaped statement. The record reveals that after a *Jackson v. Denno*[3] hearing was conducted, the trial court overruled defense counsel's motion to suppress the statement. After review of the record and the videotape, we find Appellant knowingly and voluntarily waived his *Miranda*[4] rights and his statements were voluntary and admissible. Accordingly, the trial court's ruling will not be disturbed on appeal. *Le v. State,* 1997 OK CR 55, ¶ 7, 947 P.2d 535, 542. A review of the tape and the testimony at the in camera hearing shows Appellant knowingly and voluntarily waived his rights. He agreed to speak to the detective and never asked for counsel. There is no error. *Gilbert v. State,* 1997 OK CR 71, ¶ 37–38, 951 P.2d 98, 111.

¶ 30 Appellant further contends the videotape shows an interrogation that deprived him of a fair trial. Police use different techniques in interrogation. A juror should know that interrogation is not testimony but is trying to illicit facts or get a party to make certain statements. The mere fact a detective during interrogation makes statements does not cause a reasonable juror to consider those as vouching for the credibility of a party. It is, quite frankly, a way to obtain a confession or try to obtain the truth as to what did in fact occur. This Court finds the interrogation was not misleading and did not deprive the Appellant of a fair trial. The interrogation technique was a proper one, and no error is found. *Barnett*

*v. State,* 1993 OK CR 26, ¶ 14, 853 P.2d 226, 230.

¶ 31 In the fifth sub-proposition, Appellant contends photographs taken of him on the night of the murder were improperly admitted. Appellant contends the photographs had no probative value. However, the photographs showed Appellant did not have any injuries, in contrast to the other parties who did have injuries. These injuries tend to show Appellant's statement as to what occurred on the evening was not truthful. Such photographs would therefore be relevant evidence. We find no error. 12 O.S.1991, § 2401.

¶ 32 Appellant next asks this Court to reconsider its position admitting victim impact testimony in light of the testimony of the decedent's sister, Sherry Wells, whose testimony Appellant contends was inadmissible hearsay. Our review of the record reveals the testimony was relevant to show the emotional and psychological impact of the decedent's death. As we stated in *Conover v. State,* 1997 OK CR 6, ¶ 68, 933 P.2d 904, 921, this is the type of victim impact evidence contemplated by our state statutes. We find no error.

¶ 33 Appellant also asserts it was improper for the trial court to permit the prosecutor to comment on Appellant's lack of remorse. This Court has held comments on evidence showing a defendant's lack of remorse are proper during second stage closing argument. *See Hooker v. State,* 1994 OK CR 75, ¶ 47, 887 P.2d 1351, 1365–66. Again, there is no error.

¶ 34 Appellant contends in his eighth sub-proposition that the admission of the pen pack was error because it contained a reference to a 1986 Murder II charge [of which he was acquitted], some parole documents, and some unauthenticated documents. Appellant concedes the trial court explicitly ordered the redaction of any references to the 1986 murder and the parole documents. Appellant does not indicate how he was injured by the admission of the remaining documents. We

3. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

have reviewed the documents in question and find Appellant was not prejudiced by the admission. We find the notation nebulous, at best. As to the parole documents, the jury was well aware Appellant was on parole. Lastly, we find the documents were properly authenticated, and the pen pack was properly admitted. *See Carter v. State,* 1987 OK CR 248, ¶ 24, 746 P.2d 193, 197.

¶ 35 In his ninth sub-proposition, Appellant challenges the trial court's refusal to deny the admission of State's Exhibit 130, a Judgment and Sentence and Information pertaining to his 1958 conviction for first degree manslaughter. Appellant contends the judgment and sentence was not properly authenticated. The Court Clerk of Pittsburg County has authenticated the document pursuant to the statutes. We find no error. 12 O.S. 1991, §§ 2901, 2902, 3005.

¶ 36 Appellant also contends the exhibit was improperly admitted because it failed to show Appellant was represented by counsel at the time of conviction. The State has conceded the exhibit fails to show representation. However, it should be noted there were two other prior violent convictions that were properly admitted and, therefore, this would be only cumulative. *Pickens v. State,* 1996 OK CR 6, ¶ 13, 910 P.2d 1063, 1068. The State urges the exhibit was properly admitted for the aggravating circumstance of "continuing threat." In *Romano v. State,* 1993 OK CR 8, ¶ 92, 847 P.2d 368, 389, this Court held it is not necessary that there be a final conviction for an unrelated criminal offense for the same to be admissible in the second stage of a capital trial. Accordingly, no error occurred in the admission of such exhibit.

¶ 37 Appellant also contends the admission of the Information was improper as it alleged a premeditated design to effect death. Appellant entered a plea of guilty not to murder, but to the crime of manslaughter in the first degree as noted in State's Exhibit 130. This was not objected to at trial and therefore, we review only for plain error. It is clear that the jury must have all of the evidence it needs to determine the fate of a party. The underlying facts of Appellant's prior conviction were therefore relevant, and

the evidence was properly admitted. *Paxton v. State,* 1993 OK CR 59, ¶ 34, 867 P.2d 1309, 1324.

¶ 38 Appellant also contends there was no notice of the prior conviction to support the aggravator of "continuing threat." Again, no objection was made. Therefore, the allegation is waived. *Hayes v. State,* 1992 OK CR 16, ¶ 7, 845 P.2d 890, 893.

¶ 39 Appellant objects to State's Exhibit 129 for many of the same reasons objection was made to State's Exhibit 130. This exhibit was properly identified, was properly authenticated by the Court Clerk of Greer County and is in compliance with 12 O.S. 1991, §§ 2901, 2902, 3005. Therefore, Exhibit 129 was properly admitted, and there is no error.

¶ 40 Appellant also complains that State's Exhibit 129 contains inadmissible and irrelevant hearsay. Again, no objection was made and therefore this is waived. *Mayes v. State,* 1994 OK CR 44, ¶ 26, 887 P.2d 1288, 1300. The claim as to relevancy of the Information again was waived due to lack of objection. Therefore, the exhibit was properly admitted and there is no error.

¶ 41 Appellant objects to evidence concerning a 1986 murder charge for which he was acquitted. The prosecutor asked a question concerning Appellant having killed three people. There had been a conviction for a murder in 1951, manslaughter in 1958, and the present crime. This could be the three murders the prosecutor was talking about. The prosecutor did mention something having to do with a killing "in Guymon." Objection was made and questioning stopped and, therefore, there would have been no prejudice. *Bear v. State,* 1988 OK CR 1181, ¶ 22, 762 P.2d at 956. The court did not abuse its discretion as to these evidentiary matters.

¶ 42 In his sixth proposition of error, Appellant complains the trial court committed reversible error when he restricted Appellant's right to confrontation by denying his right to challenge Reynolds, Sr.'s credibility. Recognizing Reynolds, Sr. did not testify at preliminary hearing or trial,

Appellant points out that Reynolds, Jr.'s testimony was intertwined with Reynolds, Sr.'s credibility. Reynolds, Jr.'s testimony related several comments made by Reynolds, Sr. on the evening in question.[5] These comments were made during the time of the event and are not hearsay. 12 O.S.1991, § 2803. The trial court properly limited the cross-examination of Detective Burke from whom Appellant sought to elicit information to challenge Reynolds, Sr.'s credibility. It also should be noted that cross-examination as a general rule is left to the sound discretion of the judge in the trial court. This Court will not reverse the trial judge relative to this discretion unless there is prejudice shown to Appellant. We do not find such prejudice here. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Stiles v. State*, 1992 OK CR 23, ¶ 16, 829 P.2d 984, 989. This proposition is denied.

¶ 43 Next, Appellant complains the trial court's rulings on his objections to first and second stage[6] jury instructions and the trial court's failure to give requested jury instructions denied him a right to a fair trial, due process of law, and a reliable sentencing stage. Appellant first complains the trial court erred when, over his objections, it gave the standard instructions on self-defense, as well as his requested instructions on the "Make My Day Law".[7] Appellant argues that because the two standards are different, the giving of the two instructions was confusing, contradictory, and potentially misleading and served to confuse the jury. We do not agree. As Appellant concedes, § 1289.25 justifies deadly force where an in-

truder has unlawfully entered a dwelling and the resident reasonably believes the other person **"might use any physical force, no matter how slight."** (emphasis added) On the other hand, 21 O.S.1991, § 733 justifies deadly force where it is reasonably believed necessary to protect oneself from **"imminent danger of death or great bodily harm."** (emphasis added) We believe these two standards are so significantly different that any possibility of confusion is remote.

¶ 44 We find the court acted properly in giving both instructions. As to self-defense, there was evidence Appellant was substantially older and larger than Pamela. There was also testimony that decedent and others barged into the house. The court was correct in giving the affirmative defense instruction as there was evidence to support this in the record. *Allen v. State*, 1994 OK CR 13, ¶ 33, 871 P.2d 79, 93. We find no error.

¶ 45 Appellant next complains the trial court erred in refusing to give his requested instruction or its own proposed instruction on the definition of unlawful entry. The trial court gave all of the official instructions on the Make My Day defense. As used in those instructions, the term "unlawful entry" can be understood by a person of ordinary intelligence. Accordingly, a definition of the term was not required. *See Oxley v. State*, 1997 OK CR 32, ¶ 10, 941 P.2d 520, 523.

¶ 46 Appellant also contends plain reversible error and a denial of state and

5. These comments include, "[h]e'd better use it"; "[g]et out of here"; "[g]o back in there and get her."

6. Claims involving second stage issues will be addressed under Second Stage Issues.

7. 21 O.S.1991, § 1289.25 provides:

A. The Legislature hereby recognizes that the citizens of the State of Oklahoma have a right to expect absolute safety within their own homes.

B. Any occupant of a dwelling is justified in using any degree of physical force, against another person who has made an unlawful entry into that dwelling, and when the occupant has a reasonable belief that such other person might use any physical force, no matter how slight, against any occupant of the dwelling.

C. Any occupant of a dwelling using physical force, including but not limited to deadly force, pursuant to the provisions of subsection B of this section, shall have an affirmative defense in any criminal prosecution for an offense arising from the reasonable use of such force and shall be immune from any civil liability for injuries or death resulting from the reasonable use of force.

D. The provisions of this section and the provisions of the Oklahoma Self-Defense Act, Sections 1 through 25 of this act, shall not be construed to require any person using a pistol pursuant to the provisions of this section to be licensed in any manner.

federal due process occurred when the trial judge failed to instruct the jury *sua sponte* upon one or more first degree manslaughter options that were supported by some evidence. This Court has held that "[a] homicide is first degree manslaughter when perpetrated without a design to effect death." *Conover v. State,* 1997 OK CR 6, ¶ 53, 933 P.2d 904, 907 (*quoting* 21 O.S.1991, § 711). As we have determined in Proposition IV, the evidence clearly revealed Appellant had a design to effect the death of the decedent. The medical examiner testified Pamela died of a close contact gunshot wound to the back of the head. No instruction on first degree manslaughter was required.

## ISSUES RELATING TO SENTENCING

 ¶ 47 In Proposition VII, Appellant contends the trial court erred in refusing to give his requested instruction that the State must prove beyond a reasonable doubt "that the Defendant is in fact the person who the State has identified as having those prior convictions; that the convictions are final and not on appeal; and that the person was represented by counsel or made a knowing and intelligent waiver of counsel." Appellant relies on *Cooper v. State,* 1991 OK CR 54, ¶ 8, 810 P.2d 1303, 1306. That case addressed the sufficiency of proof necessary for the State to prove beyond a reasonable doubt whether a defendant is the same person as the one listed on the Judgment and Sentence. *Cooper* did not address whether the jury had to be instructed as requested by Appellant.

¶ 48 In *Williams v. State,* 1961 OK CR 70, ¶¶ 6–7, 364 P.2d 702, 703, this Court stated,

In regard to proof of former conviction under the Habitual Criminal Act, ... the identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person, and, in the absence of rebutting testimony, supports a

finding of such identity. This will leave the question of identity to be determined by the jury, **after a proper instruction has been given,** upon a consideration of all surrounding facts and circumstances, such as commonness or unusualness of the name, the character of the former crime or crimes, and the place of its commission. (emphasis added.)

The second stage instructions do not specify the beyond a reasonable doubt standard by which the State must prove: 1) the fact of the conviction(s); and 2) the defendant is the same person who was previously convicted. *See* OUJI–CR 10–21. His 1951 and 1956 convictions were brought out through the testimony of his own witness, Mr. Mayes. Appellant was not prejudiced by the lack of his requested specific instructions on proof of prior convictions.

 ¶ 49 Second, Appellant contends the trial court erred in failing to include "residual doubt" as a mitigating circumstance. The record reveals Appellant specifically informed the trial court he had no objections to the jury instructions except for the trial court's refusal to give the requested instruction discussed above. Thus, Appellant has waived all but plain error. *Douglas v. State,* 1997 OKCR 79, ¶ 68, 951 P.2d 651, 672.

 ¶ 50 Appellant contends this specific issue is unsettled in the United States Supreme Court in light of the plurality opinion on *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). We do not agree. The United States Supreme Court held there is no constitutional right to a jury instruction making residual doubt a mitigating circumstance as it is not relevant to the defendant's character, record, or any circumstance of the offense. *Id.,* 487 U.S. at 174, 108 S.Ct. 2320, 101 L.Ed.2d 155. We see no reason to hold otherwise.[8] We find no plain error.

---

8. In his reply brief, Appellant points out the State ignored, and made no attempt to distinguish, *Fleetwood v. State,* 95 Okl.Cr. 163, 241 P.2d 962, 973–975 (Okl.Cr.1952) on which he relies. However, Appellant fails to articulate how this case supports his claim that "residual doubt is not only a relevant mitigating factor, but it may warrant modification of a death sentence." We

find no such support in *Fleetwood.* Additionally, Appellant cited to additional authority in his reply, namely, *Cummings v. State,* 1998 OK CR 45, ¶ 61, 968 P.2d 821, 838, where this Court, in its reweighing of the surviving aggravating circumstance and the mitigating factors, considered ass a mitigating factor, "there is a residual doubt as to Appellant's guilt, ..." * * *

¶ 51 Finally, Appellant asserts the trial court committed reversible error in failing to give, *sua sponte*, the limiting instruction on the proper use of the impeachment evidence. Specifically, Appellant argues the use of Lucinda Wolfchief's prior inconsistent statements as substantive evidence of guilt, in the absence of a proper limiting instruction, is reversible error.

¶ 52 We have expressly held inconsistent statements which meet the requirements of 12 O.S.1991, § 2801(4)(a)(1), may be considered as substantive evidence. *Omalza v. State*, 1995 OK CR 14, ¶ 27, 911 P.2d 286, 300. Accordingly, Lucinda Wolfchief's inconsistent statements made at preliminary hearing can be used for substantive purposes. We find no error, and this proposition is denied.

¶ 53 In Proposition VIII, Appellant asserts the evidence was insufficient to support the jury's findings of each of the aggravating circumstances alleged by the State. A determination of the sufficiency of the evidence supporting each of the aggravating circumstances is set forth in our Mandatory Sentence Review.

¶ 54 We now address Appellant's challenge to the standard which this Court uses when determining whether the evidence was sufficient to support an aggravating circumstance. Appellant relies in part on *Powell v. State*, 1995 OK CR 37, ¶ 65, 906 P.2d 765, 781–82, *cert. denied*, 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996), to support his claim that this Court has incorrectly applied an "any competent evidence" standard in determining the sufficiency of the evidence to support an aggravating circumstance. Appellant's reliance is misplaced. "When reviewing the sufficiency of the evidence of aggravating circumstances, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, .any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt." *Jackson v. State*, 1998 OK CR 39, ¶ 80, 964 P.2d 875, 894, *citing Powell*, at ¶ 82, 783. *Jackson* and *Powell* both indicate that the "any competent evidence" and the "rational fact finder" standards are the same. Therefore, there is no error and this proposition is denied.

¶ 55 In Proposition IX, Appellant raises the following issues which he concedes have been previously decided by this Court and asks this Court to reconsider them:

1. Jury Instructions Having A Diminished Effect on Mitigating Evidence.
2. Instruction To Weigh Aggregate Mitigating Circumstances Against Each Aggravating Circumstance.
3. Life Without Parole Instruction.
4. Unconstitutionality Of The Death Penalty.
5. Unconstitutionality Of Oklahoma's Death Penalty Sentencing Procedure.
6. Failure to *Voir Dire* and Evidence on Cost Effectiveness of Death Penalty.
7. Failure to Instruct on the Presumption of Life.
8. Right to Allocution and to Argue Last.
9. Exclusion of Jurors over Age 70.
10. Victim Impact As a Super Aggravator.
11. Allowing Separate Jury to Decide Punishment.
12. Duplicative Evidence in Aggravation.
13. "Death Qualified" and "Conviction Prone" Jury.
14. "Reasonable Doubt" Instruction.

Appellant has failed to demonstrate any reason for this Court to reconsider or alter its position on any of the foregoing issues. The Court has considered each issue raised above and does not find a reason to change the Court's prior holdings. Therefore, this proposition is denied.

¶ 56 In his tenth proposition of error, Appellant contends the trial court should have taken the sentencing decision from the jury due to the length of time the jury deliberated without reaching a unanimous decision [3:47 p.m.–10:40 p.m.] The trial court, after allowing the jurors to use the vending machines, ordered the jury to resume deliberations at 7:40 p.m. At approximately 8:20 p.m., defense counsel requested the trial court to either take the sentencing decision away from the jury or to give OUJI–CR2d 4–83 (1996). At approximately 9:20 p.m., de-

fense counsel renewed his request. At 9:50 p.m., the trial court called the jury to the courtroom to inform them they would not be allowed to separate until a verdict was reached. In response to the trial court's inquiry about the jury's progress, the foreman advised the court that the jury had made progress and he believed the jury would reach a verdict that evening. At 10:40 p.m., the jury returned its verdict.

¶ 57 Appellant claims the trial court's denial of his requests constituted an abuse of discretion and was coercive. From the facts as set forth above, we find no evidence the jury was coerced into reaching the death verdict. *See Stiles v. State*, 1992 OK CR 23, ¶ 47, 829 P.2d 984, 994. We find no abuse of discretion.

¶ 58 This Court has held that the length of a jury's deliberation is within the trial court's discretion. The time of deliberation in this case was approximately seven hours. This Court has previously held deliberation of seventeen hours was not unreasonable under the facts of a particular case. *Ellis v. State*, 1990 OK CR 43, ¶ 8, 795 P.2d 107, 109. Certainly, a seven hour deliberation period was not unreasonable under the circumstances or facts of this case. Therefore, this proposition is denied.

## PROSECUTORIAL MISCONDUCT

¶ 59 Appellant's eleventh proposition of error has to do with prosecutorial misconduct. Appellant has listed some twenty-two instances of alleged errors in the first stage and several instances in the second stage. The test is the fairness of the trial even if statements or comments by the prosecutor are improper. To be reversible error, the statements must be flagrant and prejudicial to the defendant. *Romano* at ¶ 41, 847 P.2d at 380. With this test in mind, we will review the alleged errors.

¶ 60 Appellant alleges during the first stage that the State disclosed press information about prior convictions and this was heard by some of the prospective jurors. After checking the record, we do not find this alleged error.

¶ 61 Appellant raises several propositions of alleged error due to statements of the prosecutor during the opening statement. The trial court has the discretion as to the scope of the opening statement, and this Court will not reverse unless we find an abuse of such discretion. *Ledbetter v. State*, 1997 OK CR 5, ¶ 76–77, 933 P.2d 880, 900–901. We have reviewed the alleged errors and do not find any abuse of discretion or that any of the alleged statements require reversal.

¶ 62 Appellant complains that during closing argument the prosecutor referred to the murder as an "execution style slaying." Clearly from the evidence, this was proper argument by the prosecutor.

¶ 63 Appellant complains about the prosecutor trying to diminish the importance of instructions, as to "Make My Day." An objection was made by the defense and the court properly told the jury that they had the instructions and they were to follow the instructions. If any error occurred, it was cured by the court's admonishment. *See Smith v. State*, 1996 OK CR 50, ¶ 29, 932 P.2d 521, 531–32.

¶ 64 Appellant objects to statements by the prosecutor arguing that Reynolds, Jr. was cross-examined "at the preliminary hearing ... in the same detail that every other witness is cross-examined here in this court room." The Court has reviewed all of the alleged errors of purported prosecutorial misconduct. This Court does not find Appellant failed to receive a fair trial or that any of the alleged errors constitute reversible error.

¶ 65 Appellant further contends there was prosecutorial misconduct during second stage closing arguments. Appellant complains the prosecutors gave their personal opinion that death was a proper punishment in this case. A prosecutor may comment on the punishment to be given. *Hammer v. State*, 1988 OK CR 149, ¶ 15, 760 P.2d 200, 204.

¶ 66 Appellant contends that the prosecutor improperly misled jurors regarding their responsibility in determining the proper punishment in this matter. The prosecutor's statements have been examined by the Court

and are proper. *See Caldwell v. Mississippi,* 472 U.S. 320, 327–29, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The Court has reviewed the alleged errors and finds that any erroneous statements were harmless. The Court does not find that the remarks had an influence on the jury's verdict nor did it effect the fairness of the trial. *See Spears v. State,* 1995 OK CR 36, ¶ 60, 900 P.2d 431, 445, *cert. denied,* 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995). Therefore, this proposition of error fails.

¶ 67 The Appellant further contends the mitigating evidence outweighed the aggravating evidence. This is a question for the jury to determine based upon the evidence. This Court will determine if there was sufficient evidence from which a rational trier of fact could find that the aggravating circumstances outweighed the mitigating circumstances. *Fisher v. State,* 1987 OK CR 85, 1, 25, 736 P.2d 1003, 1011. In this particular case, the jury found that the aggravating evidence outweighed the mitigating evidence and their decision is supported by the evidence. Therefore, there is no error, and this proposition is denied.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

¶ 68 In his thirteenth proposition of error, Appellant raises numerous claims of ineffective assistance of counsel. Appellant asks this Court to review for plain error and for ineffective assistance of counsel any finding in Propositions I–XII that trial counsel failed to properly preserve for review. Appellant also claims his trial counsel was ineffective for not requesting an instruction on manslaughter or prior inconsistent statements. Appellant also complains his counsel should have objected to certain statements of the prosecutor and the admission of Appellant's prior convictions. We find Appellant was not deprived of his constitutional right to effective assistance of trial counsel. *See Valdez v. State,* 1995 OK CR 18, ¶ 95, 900 P.2d 363, 388 and *Roney v. State,* 1991 OK CR 114, ¶ 9, n. 1, 819 P.2d 286, 288, n. 1.

¶ 69 In sub-proposition B, Appellant claims defense counsel failed to obtain the testimony of Gary Dean Gale, Appellant's next door neighbor. The potential witness was incarcerated in Missouri and arrangements had been made to take Mr. Gale's deposition by telephone. Defense counsel later decided not to take the deposition and canceled same.

¶ 70 To prevail on a claim of ineffective assistance of counsel, Appellant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance by showing: [1] that trial counsel's performance was deficient; and [2] that he was prejudiced by the deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See also Spears* at ¶ 54, 900 P.2d at 445. One alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. *See also Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

¶ 71 Additionally, there is a strong presumption that defense counsel's decision not to proceed with the deposition was the product of trial strategy and not incompetence. This Court will not second guess defense counsel's trial strategy. *Grady v. State,* 1997 OK CR 67, ¶ 9, 947 P.2d 1069, 1072.

¶ 72 "The fact that a defense attorney could have investigated an issue more thoroughly does not, in and of itself, constitute ineffective assistance." *Fontenot v. State,* 1994 OK CR 42, ¶ 61–62, 881 P.2d 69, 86. We have reviewed the transcribed tape recorded interview of Mr. Gale conducted on April 30, 1998, by Oklahoma County Public Defender Investigator John Floyd. We find Mr. Gale's statements were cumulative, because Reynolds, Jr. testified Appellant told his father to get Pamela out of his house. Accordingly, Appellant's claim of ineffective assistance of counsel for failure to investigate and otherwise present this evidence is without merit.

¶ 73 In sub-proposition C, Appellant, in accordance with Rule 3.11 of the *Rules of the Oklahoma Court of Criminal Appeals,* 22 O.S.Supp.1996, Ch. 18, App., Appellant re-

quests an evidentiary hearing. Before a party is entitled to an evidentiary hearing they must show by clear and convincing evidence a strong possibility that counsel was ineffective. 1998 OK CR 15, ¶ 63, 954 P.2d 152, 168. Counsel must show matters from the record or outside the record that trial counsel failed to make proper investigation, make objections, request instructions, or utilize additional evidence or witnesses that should have been presented at trial. Appellant has failed to meet this standard, and therefore, Appellant's request for an evidentiary hearing is denied.

■ ¶ 74 In his last proposition of error, Appellant asks this Court to consider the combined effect of all individual errors and to grant him a new trial or modification of his death sentence. If individual assertions of error are rejected, "then the propositions when considered collectively will not yield a different result." *Darks v. State,* 1998 OK CR 15, ¶ 65, 954 P.2d 152, 168.

## MANDATORY SENTENCE REVIEW

■ ¶ 75 Pursuant to 21 O.S.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S. 1991, § 701.12. We shall first determine whether the evidence was sufficient to support the imposition of the death penalty.

■ ¶ 76 The jury found the following aggravators:

1. The defendant was previously convicted of a felony involving the use or threat of violence to the person;

2. The defendant knowingly created a great risk of death to more than one person;

3. The murder was committed by a person while serving a sentence of imprisonment on conviction of a felony; and

4. The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

In reviewing the evidence presented by the State, we find Appellant had three prior felonies involving the use or threat of violence: 1) murder to which he entered a plea of guilty on April 18, 1951; 2) the crime of Riot to which he entered a plea of guilty on August 23, 1956; and 3) manslaughter in the first degree to which he entered a plea of guilty on November 10, 1958. We reject Appellant's argument that these convictions are stale and cannot be used to support this aggravating circumstance. *See* 21 O.S.1991, 701.12(1). This Court has declined to expand 21 O.S.1991, § 51 to apply to aggravating circumstances. *Pickens v. State,* 1993 OK CR 15, ¶ 38, 850 P.2d 328, 338.

■ ¶ 77 Likewise, we reject Appellant's argument that the use of these three prior felony convictions to support the aggravating circumstance, the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, is unconstitutionally duplicative. *See Wood v. State,* 1998 OK CR 19, ¶ 51, 959 P.2d 1, 13 (finding the same evidence may support the finding of more than one aggravating circumstance.)

■ ¶ 78 We find Appellant knowingly created a great risk of death to more than one person because Lucinda Wolfchief and Charlene Loneman were in close proximity in terms of time and location. *See Le v. State,* 1997 OK CR 55, ¶ 33, 947 P.2d 535, 549.

■ ¶ 79 We further find the Appellant's other crimes, the callous nature of this crime and Appellant's blatant disregard for the importance of human life [the 1951 murder conviction and the 1958 manslaughter of a prison inmate] adequately support the jury's finding that Appellant is a continuing threat to society. The evidence supports the finding of the four aggravators.

¶ 80 The trial court submitted the following mitigating circumstances to the jury:

1. John Bernay is currently sixty-seven (67) years of age.

2. While in the Oklahoma City Jail for the last 25 months, John Bernay has not been a threat to harm anyone in that facility.

3. In a structured prison environment, John Bernay is not a person likely to commit acts that would constitute a continuing threat to society.

4. John Bernay has cooperated fully with the Oklahoma City Police Department and has never denied his involvement in these events.

5. John Bernay was an employed and productive member of society for twenty-eight straight years from 1967 through 1995.

6. John Bernay's last felony conviction occurred thirty nine years ago, in the year 1958.

7. John Bernay has very strong feelings of sorrow and sadness that Pamela Wolfchief lost her life.

8. Pamela Wolfchief, at the time of her death, was under the influence of alcohol and prescription drugs.

¶ 81 Upon carefully considering and reviewing the evidence supporting the aggravating and mitigating circumstances, this Court finds the sentence of death is appropriate. Furthermore, we find the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor.[9] Finding no error warranting reversal or modification, the Judgment and Sentence is **AFFIRMED.**

¶ 82 The Judgment and Sentence of the trial court is **AFFIRMED.**

1999 OK CR 46

*ORDER DENYING REHEARING AND MOTION TO CORRECT OPINION AND DIRECTING ISSUANCE OF MANDATE*

¶ 1 Appellant, John Camp Bernay, has filed his Petition For Rehearing and Motion To Correct Opinion requesting this Court to grant rehearing because some questions decisive of the case and duly submitted by the attorney of record were overlooked by the Court and the decision in *Bernay v. State,* 1999 OK CR 37, 989 P.2d 998, affirming his conviction and sentence of death for the crime of Murder in the First Degree, malice aforethought, is contrary to controlling authority. Additionally, Petitioner requests this Court to correct its opinion to accurately reflect the record.

■ ¶ 2 We have considered the purported irregularities as to the facts and law. Although there may be some minor irregularities as to the facts, the facts are basically correct. However, none of the purported irregularities change the opinion of the Court as to affirming the judgment and sentence. Therefore, we **FIND** that Appellant's Petition For Rehearing and Motion To Correct Opinion, should be, and the same are hereby **DENIED.** The Clerk of the Court is directed to issue the Mandate herein.

¶ 3 **IT IS SO ORDERED.**

¶ 4 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 7th day of December, 1999.

/s/ Reta M. Strubhar
RETA M. STRUBHAR, Presiding Judge
/s/ Gary L. Lumpkin, concurs in results
GARY L. LUMPKIN, Vice Presiding Judge
/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge
/s/ Charles S. Chapel
CHARLES S. CHAPEL, Judge
/s/ Steve Lile, concurs in results
STEVE LILE, Judge

---

9. Appellant also raises this argument in Proposition 12.